# United States District Court For The
# Eastern District of Arkansas
# Western Division

Raymond D. Thompson                              Plaintiff/ProSe

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

FEB 1 4 2018

JAMES W. McCORMACK, CLERK
By:_____
                              DEP CLERK

        V.

United States of America Social
Security Administration (SSA):
SSA Administrative Law Judge
Bradley L. Davis                              Defendants

4:18cv128-JLH

This case assigned to District Judge _Holmes_
and to Magistrate Judge _Volpe_

## COMPLAINT

## UNDER CIVIL RIGHTS VIOLATIONS

This civil action is brought to this Court pursuit to the Defendant's violations of United

States Code (U.S.C.) Title 42 § 1983; *"Deprivation of Rights"*. Jurisdiction of the Court

is established through Article III; section 2, clause 1 of the Constitution of the United

States: specifically conferred on this Court pursuant to U.S.C. Title 28 §1331.


Venue is deemed proper in this District Court for the Eastern District of Arkansas,

Western Division; due to the fact that the Defendant is a US Government entity whose

Raymond D. Thompson  vs  Social Security Administration

37    place of business is in this District under U.S.C. Title 28  § 1391 (b) (e) (1): pursuant to

38    U.S.C. Title 28  § 1391 (c).  A substantial portion of the events resulting in this action

39    occurred in this District and the Plaintiff's property (Social Security Benefits) which is

40    the subject of this action, is situated in this District.

41

42    Equitable and other Relief are also sought under U.S.C. Title 42 § 19

43    83 sub-chapter (1).

44

45    Plaintiff, Raymond D. Thompson/ProSe, is a citizen of the United States and resides at

46    5400 Summertree Drive Apt. SD-11; North Little Rock Arkansas 72116: Telephone;

47    (501) 442-1341.

48

49    Defendant, USA Social Security Administration and Review, place of business is located

50    at Room 2405 Federal Building; 700 West Capitol Avenue, Little Rock Arkansas 72201:

51    Telephone; (866) 592-2549: Fax; (501) 324-7137.

52

53    Plaintiff sought his "Social Security Benefits" (property) entitled through the United

54    States Code Title 42 Chapter 7-Social Security; Subchapter I-(Grants to States for Old-

55    Age Assistance)-§§ 301 thru 306; Subchapter II-Federal Old-Age, Survivors and

56    Disability Insurance Benefits (§§ 401 thru 434).

57

58    Plaintiff's Disability start date is June 2, 2003 as defined through U.S.C. Title II (Worker

59    or Child-DIWC), Title XVI (SSIA) and (SSID).  The Plaintiff's entitlement to Disability

Raymond D. Thompson  vs  Social Security Administration

60    Insurance Benefits is established through the *Authority* of the "Social Security Act (the

61    Act) §§ 216 (i) and 223 (a).  The Plaintiff's entitlement to Supplemental Security Income

62    (SSI) is through the Social Security Act §§ 216 (i), 223 (d) and 1614 (a)(3).  The

63    Plaintiff's Burden of Proof was established through the submission of substantiated

64    evidence as presented to the Social Security Administration (SSA)/Administrative Law

65    Judge (Bradley L. Davis): reference Plaintiff's Attachment #1; "Claimant's Position

66    Statement" submitted to the Defendant on October 12, 2017.

67

68    The Defendant's Procedures and Policy violates the 14th Amendment to the Constitution

69    of the United States through the violations of "Due Process of Law".  The mitigation of

70    this cause was initiated on or about June 2, 2003 and continued to the filing of this

71    Complaint with this Court.

72

73    The Plaintiff request compensation for the Disabilities covering a period of *"Eligibility*

74    *for Benefits"* commencing on or about June 2, 2003 to the present: monthly

75    compensation plus back pay.

76

77    Equity/Damages are also sought under Title 42 U.S.C. § 1983; to include the cost of the

78    litigation of this cause of action.

79

80

81

82

Raymond D. Thompson  vs  Social Security Administration

83 **<u>INTRODUCTION</u>**

84

85 The Plaintiff (Raymond D. Thompson), through Medical Records, became disabled on or

86 about June 2, 2003 as judicially defined through United States Code (U.S.C.); Title II

87 (Worker or Child-DIWC), Title XVI (SSIA) and (SSID).  *Reference: Attachment #1; "Claimant's*

88 *Position Statement"; page 1, lines 39-41.*  The Plaintiff's entitlement to Disability Insurance

89 Benefits is authorized through the Social Security Act (the Act) §§ 216 (i) and 223 (a).

90 Plaintiff's entitlement to Supplemental Security Income (SSI) through the Social Security

91 Act §§ 216 (i), 223 (d) and 1614 (a)(3).

92

93 The Plaintiff's disability is due to physical and biological conditions which inhibits his

94 ability to perform substantial gainful work.  The disability has lasted for a period of June

95 2, 2003 to the present and is medically projected to last through

96 the *life* of the Plaintiff.  *Reference: Attachment #1; "Claimant's Position Statement"; page 2, lines 1-6*

97

98 Work performed in the past by the Plaintiff is inhibited through the Disabilities.  The

99 Plaintiff has been unemployed since the on-set of the Disability (June 2, 2003): work

100 history confirmation.  The Plaintiff has not performed any type of work since the

101 disability occurred.  The severity of the Disability was acknowledged by Medical

102 Personnel and resulted in the loss of Biological reproductive function and limb (the Loss

103 of the Plaintiff's Right Testicle).  The medical conditions presented a High Risk of the

104 Loss of the Plaintiff's *Life*: Plaintiff diagnosed with "Septic Poisoning".  *Reference:*

105 *Attachment #1; "Claimant's Position Statement"; page 2, lines 8-16*

106

Raymond D. Thompson  vs  Social Security Administration

107    The Plaintiff cannot perform any form of work; considering age, education and work

108    experience.  The Plaintiff was participating in a Department of Veterans Affairs

109    Vocational Rehabilitation program and the aggravated Disabilities caused a withdrawal

110    from training.  The physical and mental requirement for the trainee is the same as a

111    person employed in that position: duties beyond the physical means of the Plaintiff.  The

112    disability was the contributing factor for the Plaintiff being placed on 4 to 6 weeks of

113    bed-rest: November of 2014.  *Reference: Attachment #1; "Claimant's Position Statement"; page 2, lines 15-*

114    *25*

115

116    The Plaintiff was born January 6, 1957 (age 61+) and the age is an established inhibitor

117    to employment.  Representatives with the Arkansas Department of Human Services

118    (Nancy Their/Case Worker) stated that their Policy (*Federal Law*) does not require that

119    the Plaintiff seek employment as a recipient of Federal Aid (SNAP/Food Stamps); due to

120    age and Disability.  The Federal Laws governing "Employability" is the same, relevant to

121    the Defendant.  The Plaintiff is a recipient of Service-connected Disability Compensation

122    through the US Department of Veterans Affairs (US Army Enlistment Contract).

123    *Reference: Attachment #1; "Claimant's Position Statement"; page 2, lines 27-37*

124

125    Plaintiff's present medical conditions, which is expected to last throughout his *Life*;

126    prevents the ability to gain and maintain substantial gainful employment.  Work

127    performed by the Plaintiff required lifting, walking, standing (2 hours or more) which is

128    well beyond the physical abilities.  The Plaintiff payment into the Social Security Fund

129    (Social Security Act) is determined through the work history and was revealed to the

130    Defendant.  *Reference: Attachment #1; "Claimant's Position Statement"; page 2, lines 39-48*

131

Raymond D. Thompson  vs  Social Security Administration

132    The Plaintiff was insured under the Social Security Act: date last insured "(DIB/Freeze

133    Case); 03/31/2006". The Plaintiff was disabled on 06/02/2003; on or about the initial

134    filing for his Social Security Benefits. *Reference: Attachment #1; "Claimant's Position Statement"; page*

135    *3, lines 1-4*

136

137    The Defendant's (Social Security Administration) Policy and Procedures violates the 14th

138    Amendment to the Constitution of the United States. The Plaintiff's "Due Process of

139    Law" rights were violated by the Defendant; deprivation of his Social Security Benefits

140    as deemed through *Federal Law*. The Plaintiff's Health and Well-being (Disability) has

141    persistently deteriorated since the original filing for Benefits. Medical personnel, who

142    the Defendant allegedly based their Decision, acts are highly reflective of *"Medical-*

143    *Malpractice/Negligence"*. The Plaintiff's medical conditions as well as treatment were

144    revealed through the evidence (Medical Records) presented to the Plaintiff by the

145    Defendant: refer to the "Encrypted Disk-CD; dated July 20, 2016: missed diagnoses of

146    the *"Testicular Torsion"* and the treatment of the Right Hernia condition; which

147    constitutes negligence.

148

149    **<u>Statement of Relevant Facts</u>**

150

151    The Plaintiff (Raymond D. Thompson) received documentation from the Defendant (US

152    Social Security Administration/Administrative Law Judge/Bradley L. Davis) which

153    stated that "The claimant submitted or informed the Administrative Law Judge (ALJ)

154    about additional written evidence less than five business days before the scheduled

155    hearing date": the Hearing Date was November 29, 2017. *Reference: Attachment #2: SSA Notice of*

156   *Decision; dated February 5, 2018* All relevant evidentiary presented at the Hearing was included

157   in the Plaintiff's/Claimant's "Position Statement" which the Defendant received on

158   October 12, 2017; 46 days prior to the Hearing (see Attachment #1).  The Plaintiff did not

159   submit additional evidentiary which was outside the perimeters of the evidence of

160   Record: the "Encrypted Disk-CD".  The "Encrypted Disk-CD" was submitted to the

161   Plaintiff by the Defendant on or about July 20, 2016.

162

163   The date of the Hearing, the Defendant produce a witness identified as Myrtle M.

164   Johnson, "an impartial vocational expert".  Ms Johnson testified too the employability of

165   the Plaintiff.  The Defendant's witness opinion was allegedly based on the *"Dictionary of*

166   *Occupation Titles"*: see Attachment #2 page 11 of 11; "Notice of Decision".  The

167   Plaintiff's cross examination of the witness solicited a response from ALJ Bradley L.

168   Davis; regarding employability: ALJ answered for the witness.  The Plaintiff submitted a

169   rebuttal in the "Claimant's Position Statement".  Based on the Department of Health and

170   Human Services (HHS) criteria (Federal Law); the Plaintiff is *"Not Employable"*.

171   *Reference: Attachment #1; "Claimant's Position Statement"; page 2, lines 27-37*

172

173

174   The Defendant identified Dr. William Dale Morris (MD) who stated in the Plaintiff's

175   medical record that the "Testicular Torsion" of Right Testicle (Limb) was *Highly likely* to

176   be caused by the Military Service-connected Hernia condition.  Dr. Morris findings

177   resulted in an increase of the Plaintiff's monetary VA Compensation: see evidentiary

178   submitted at the SSA Hearing: Encrypted Disk-CD and Defendants "Notice of Decision"

179   dated February 5, 2018; page 9 of 11.

Raymond D. Thompson  vs  Social Security Administration

180

181

182   **Plaintiff's Response to the Preceding:   The Defendant's Policy and Procedures as**

183   **reflected in the preceding paragraphs, violates**

184   **the 14th Amendment to the Constitution of the**

185   **United States; thus, the Plaintiff's "Civil**

186   **Rights" Through the Plaintiff's provision of the**

187   **Proof of Elgibility for Benefits during the Hearing, as**

188   **required by Federal Law.**

189

190

191   On or about July 16, 2015; the Plaintiff re-open his Claim for Social Security Benefits.

192

193   The Defendant scheduled a Medical Appointment for the Plaintiff on November 7, 2015.

194

195   January 19, 2016 the Plaintiff received a "Notice of Disapproval" response from the

196   Defendant.

197

198   The Plaintiff received a "Notice of Reconsideration" from the Defendant, dated March 8,

199   2016.

200

201   On or about April 1, 2016 the Plaintiff requested a hearing from the SSA Administrative

202   Law Judge.   *Reference: Attachment #3 "Request For Hearing"*

203

Raymond D. Thompson  vs  Social Security Administration

204　　The Defendant submitted an "Encrypted CD (Evidence) to the Plaintiff which was dated

205　　July 20, 2016.  The Defendant stated that the File was ready for review.

206

207　　The Plaintiff received a "Notice of Hearing" from the Defendant on September 1, 2017;

208　　acknowledging the November 29, 2017 Hearing date.

209

210　　A population Demographic of the United States of America listed the state of Arkansas

211　　population ranking at 33; Nevada population ranking at 34; Mississippi ranked at 32 and

212　　Utah was ranked at 31.

213　　Reference:  wikepedia.org/wiki/List_of_U.S._states_by_population

214

215　　US District Courts and US Courts of Appeal data revealed the following information

216　　regarding Civil Rights cases filed against the Social Security Administration:

217

218　　　　❖　Arkansas cases filed = 8,806

219　　　　❖　Mississippi cases filed = 1,573

220　　　　❖　Utah cases filed = 967

221　　　　❖　Nevada cases filed = 791

222

223　　Social Security Lawsuit cases (filed by all 4 States) = 12,137

224

225　　Percentage of the Social Security cases Filed in the State of Arkansas = 76.6% (8,806

226　　cases):

227

Raymond D. Thompson  vs  Social Security Administration

228   Data retrieved from the Web-sites provided by JUSTIA under the topic of Cases by type

229   of Lawsuit at the Social Security Link: Social Security Cases, Dockets and Filing: Cases

230   by State: *https://dockets.justia.com/browse/state-Arkansas/noscat-1*

231

232   **Plaintiff's Response:  The Defendant's Policy and Procedures which generated the**

233                        **Data in the preceding paragraphs, strongly supports (substantiates)**

234                        **Violations of U.S.C. Title 42 section 1983 "Deprivation of Rights",**

235                        **Social Security Act and the 14th Amendment to the Constitution of**

236                        **The United States**

237

238   The Defendant was aware of medical personnel diagnoses of the Plaintiff's chronic

239   medical conditions prior to their "Decision" on the case. *Reference: Attachment #1; page 4, lines 1-4*

240

241   The Defendant stated that the Plaintiff's case was currently "CLOSED-Granted": case

242   closed date; January 14, 2016.  *Reference: Attachment #1; page 4, lines 6-11*

243

244   Medical personnel representing the Defendant confirmed the Plaintiff's medical

245   conditions in respect to the Left Shoulder injury: "a screw passing obliquely from the

246   anterior Inferior glenoid rim to the posterior superior".  Medical personnel discovered

247   "evidence of orthopedic Fixation of presumed remote glenoid Fracture, Irregular

248   hyperostosis and narrowing of the inferior gleno-humeral joint space".  Medical evidence

249   is highly reflective of the Plaintiff's deteriorated health during the Life of the Disabilities.

250   *Reference: Attachment #1; page 13-19*

251

Raymond D. Thompson  vs  Social Security Administration

252   The Plaintiff's Homeless status during the period of the Disabilities is well documented

253   through the proof/evidence presented to the Defendant during the mitigation of the

254   Plaintiff's claim to his Social Security Benefits.

255

256   Medical personnel, whose findings the Defendant based their Decisions, stated that the

257   Plaintiff's Left Shoulder injury contributed to "degenerative arthritis in the Left

258   acromico-clavicular, old blanket Fx inferior glenoid w/cortical screw in place, calcific

259   tendinitis supraspinatus tendon": the statement was dated November 26, 2007.  *Reference:*

260   *Attachment #1; page 5, lines 4-17*

261

262   Medical records of which the Defendant based their Decision stated that the Plaintiff's

263   "Right Inguinal Hernia recurred approximately in 2001, was diagnosed on 01/17/08 at

264   West LA VAMC".  Medical personnel plans were "Elective surgical repair recommended,

265   the patient may return to gen. surg. For re-evaluation and scheduling of open hernia

266   repair w/poss. Mesh placement": report dated January 17, 2008.  *Reference: Attachment #1; page*

267   *5, lines 19-23*

268

269   The Plaintiff returned to the Medical Personnel stipulated in the preceding paragraph on

270   February 15, 2008: Medical Personnel stated that there was "NO EVIDENCE OF

271   INGUINAL HERNIAS": supports Medical Mal-practic/Negligence.  *Reference: Attachment #1;*

272   *page 5, lines 25-27.*

273

274

275

276

277

278                                          **<u>Closing</u>**

279

280   The Plaintiff's Life was placed in jeopardy through the Defendant's Negligence *("Septic*

281   *Poisoning")*.  The Plaintiff lost Reproduction Function (Right Testicle), which is the

282   equivalence of the "Loss of Limb" Constitutionally defined.

283

284   The Burden of Proof as required by the Plaintiff through the "Federal Rules of Evidence"

285   was submitted to the Defendant throughout the Mitigation of this cause: a period

286   spanning June 2, 2003 to the present.

287

288   The Defendant's Policy and Procedures violated the following United States

289   Constitutional Statures and Federal Laws:

290

291         ❖  14th Amendment to the United States Constitution

292         ❖  United States Code (U.S.C.), Title 42 Chapter 7-Social Security; Subchapter I-

293             (Grants To States For Old-Age Assistance)-§§ 301-306, Subchapter II-Federal

294             Old-Age, Survivors and Disability Insurance Benefits §§ 401-434

295         ❖  Social Security Act (the Act)

296

297   The Plaintiff's Disabilities start date is June 2, 2003 as defined through U.S.C. Title II

298   (Worker or Child-DIWC) and U.S.C. Title XVI (SSIA) and (SSID).  The Plaintiff's

299   entitlement to Disability Insurance Benefits is established through the Authority of the

300   "Social Security Act (the Act) §§ 216 (i) and 223 (a). The Plaintiff's entitlement to

Raymond D. Thompson  vs  Social Security Administration

301    Supplemental Security Income (SSI) is through the Social Security Act §§ 216 (i), 223

302    (d) and 1614 (a)(3).  The evidence (proof) of the Defendant's violations of US

303    Constitutional based Laws were presented throughout the mitigation of this cause of

304    action.

305

306    The Plaintiff (Raymond D. Thompson/ProSe) request from the United States District

307    Court for the Eastern District of Arkansas Western Division; their assistance in the

308    retrieval of his Social Security Benefits as prescribed through Federal Laws (Social

309    Security Act/the Act).  The preponderance of evidence/proof of Plaintiff's *"Eligibility*

310    *For Benefits"* was submitted to the Defendant (Social Security Administration and

311    Review: Administrative Law Judge Bradley L. Davis) throughout the mitigation of this

312    cause.

313

314    The Plaintiff request compensation for the Disabilities spanning a period dating from

315    June 2, 2003 to present: monthly compensation plus back payments.

316    The Plaintiff request from this Court Equity/Damages; sought under U.S.C. Title 42 §

317    1983: to include the cost of the litigation of this cause of action.

318

319                              Respectfully

320                    *Raymond D. Thompson* 03-14-2018

321                              Raymond D. Thompson (Plaintiff/ProSe)

322

323

Raymond D. Thompson  vs  Social Security Administration

324   I, Raymond D. Thompson (Plaintiff/ProSe) certify that this "Federal Civil Complaint" is

325   true and correct to the best of my knowledge and beliefs.

326
327   The Plaintiff/ProSe (Raymond D. Thompson) will submit a Copy of this Civil Complaint
328   to the Defendant (United States of America Social Security Administration (SSA): SSA
329   Bradley L. Davis upon the completion of the Filings in the United States District Court.

330

331   **ENCLOSURES/ATTACHMENT:**

332

333       I.   Attachment #1: "Claimant's Position Statement"

334       II.  Attachment #2: SSA Administrative Law Judge Bradley L.Davis "Decision"

335       III. Attachment #3: Request For Hearing By Administrative Law Judge
336
337
338
339
340   **Reference:** Constitutional Statures and Federal Laws
341

342       1)  Article III; section 2, clause 1 of the Constitution of the United States

343       2)  14th Amendment of the Constitution of the United States

344       3)  United States Code (U.S.C.) Title 42 § 1983

345       4)  U.S.C. Title 42 § 1983; "Deprivation of Rights"

346       5)  U.S.C. Title II (Worker or Child-DIWC)

347       6)  U.S.C. Title XVI (SSIA) and (SSID)

348       7)  U.S.C. Title 28 § 1331, 1391 (b)(e)(1), 1391 (c)

349       8)  Social Security Act (the Act) §§ 216(i) and 223(a)

350       9)  Social Security Act § (i), 223 (d) and 1614 (a)(3)

351

SSA ADMINISTRATION: ADJUDICATION AND REVIEW: CLAIMANT; R.D. THOMPSON-0007: 11/29/2017

October 12, 2017

# SOCIAL SECURITY ADMINISTRATION
# OFFICE OF DISABILITY ADJUDICATION AND REVIEW

Room 2405 Federal Bldg.
700 West Capital Avenue
Little Rock, Arkansas  72201-3227
Telephone: (866) 592-2549/Fax: (501)324-7137

**RECEIVED**

## CLAIMANT

OCT 12 2017

Raymond Darnell Thompson (Claimant)
Social Security Number (SSN): 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 ODAR-Little Rock, AR
5400 Summertree Drive Apt. SD-11
North Little Rock, Arkansas 72116
Telephone Number: (501)-442-1341 or (501)-247-1411
E-mail Address: Thompsonrrt@aol.com and or rdthompson07@gmail.com

**ADJUDICATION HEARINGS: November 29, 2017; 1:00PM**

**ADMINISTRATIVE LAW JUDGE: Bradley L. Davis**

## CLAIMANT'S POSITION STATEMENT

## INTRODUCTION

The Claimant (Raymond D. Thompson) became disabled on June 2, 2003, as judicially
defined through United States Codes; Title II (Worker or Child-DIWC), Title XVI
(SSIA) and (SSID). *Reference: (Encrypted Disk (CD docs folder-Evidence-1E.tif) dated; July 20, 2016)* The
Claimant is entitled to Disability Insurance Benefits through the Social Security Act (the
Act) sections 216 (i) and 223 (a).  The claimant is entitled to Supplemental Security
Income (SSI) through the Social Security Act sections 216 (i), 223 (d) and 1614 (a)(3).

Raymond D. Thompson  vs  Social Security Administration

1   The claimant is disabled due to Physical/Biological conditions which inhibits his ability
2   to perform substantial gainful work.
3
4   The Disability has lasted for a period of June 2, 2003-present and is medically projected
5   to last through the life of the claimant. *Reference: Evidence; Encrypted Disk-CD docs folder, and Social Security*
6   *Act (the Act)*
7
8   The claimant has been unemployed since the on-set of the disability (June 2, 2003): work
9   history confirmation. *Reference: Evidence; Encrypted Disk-CD docs folder; 4D.tif, pages 1-7* The claimant has
10  not performed any type of work since the disability occurred: June 2, 2003.
11  The severity of the Disability (medical conditions) caused the loss of function/limb
12  (Right Testicle) and presented a high risk of the loss of life: septic poisoning. *Reference:*
13  *Encrypted Disk-CD docs folder; 3F.tif. page 31("Septated Hydrocele with evidence of torsion")*
14
15  Work performed in the past by the claimant is inhibited through the Disability. *Reference:*
16  *Work History-Encrypted Disk-CD docs folder; 4D.tif. pages 1-7*
17
18  The claimant can not perform any form of work; considering age, education and work
19  experience.  The claimant was participating in a Department of Veterans Affairs
20  Vocational Rehabilitation program and the aggravated Disabilities caused a withdrawal
21  from training.  The physical and mental requirement for the trainee is the same as a
22  person employed in that position: duties beyond the physical means of the claimant.
23  *Reference: Document included: University of Arkansas at Little Rock Office of Records and Registration, Drop/Withdrawal Form:*
24  *Fall Term 2014-(ENCLOSRES: DOCUMENTS)* The disability was the contributing factor for the
25  claimant being placed on 4 to 6 weeks of bed rest: November of 2014.
26
27  The claimant was born January 6, 1957 (age; 60+) and the age is an established inhibitor
28  to employment.  Statically; data stored through government files, unemployables based
29  on race, sex and age supports the claimant's non-employable status.  Representatives
30  (Nancy Thier/Case Worker) with the Arkansas Department of Human Services stated that
31  their Policy does not require that the claimant seek employment as a recipient of Federal
32  Aid (SNAP/Food Stamps); due to his age (reference; unemployable). Contact information
33  for the Department of Human Services is as follows: Division of County Operations,
34  Pulaski North: located at PO Box 5791; 1900 East Washington Ave., North Little Rock
35  Arkansas 72119: Telephone: Ms Their/Case worker, 501-682-0157; other 501-682-0100.
36  The Claimant is a recipient of Service-connected Disability Compensation through the
37  US Department of Veteran's Affairs (US Army Enlistment Contract).
38
39  Work performed by the claimant required lifting, walking, standing (2hours or more)
40  which is well beyond the physical abilities. *Reference: Encrypted Disk-CD docs folder; 3F.tif. page*
41  *31("Septated Hydrocele with evidence of torsion")* Present medical conditions, which is expected to last
42  through the life of the claimant, prevents the gaining and maintaining of substantial
43  gainful employment.  *Reference: (1) United States Codes; Title II (Worker or Child-DIWC), (2) Title XVI (SSIA) and*
44  *(SSID)*
45
46  The claimant's payments into the Social Security Fund (Social Security Act) are
47  determined trough the work history, revealed through the evidence (Encrypted CD).
48  *Reference: Encrypted Disk-CD: 4D.tif, pages 1-7*
49

357
358
359

Raymond D. Thompson  vs  Social Security Administration

The claimant became disabled on this Date; 06/02/2003: the filing of Social Security Benefits. The claimant was insured under the Social Security Act: Dated last insured (DIB/Freeze case); 03/31/2006.  *Reference: Encrypted Disk-CD docs folder; 9E.tif, page 1: Encrypted Disk-CD; 4D.tif, pages 1-7: Title 20, Chapter III part 404, Subpart B, Subpart P and Part 416, subpart 1*

The claimant's Health and Well-being (Disability) has persistently deteriorated, since the original filing for Social Security Benefits.  The medical condition, past and present, is revealed through the evidence presented and included in the Encrypted Disk-CD.  The inguinal hernia was repaired during the year of 1978 and resulted in the loss of the right testicle; November of 2014.  The claimant's left shoulder injury was surgically repaired in the late 1970's and caused traumatic arthritis.  *Reference: Encrypted Disk-CD: 15F.tif, pages 3-19*

## Statement of Relevant Facts: Established the Claimant's Eligibility for Benefits under the Social Security Act (the Act)

The Claimant's date of Birth is January 6, 1957 (age; 60+).  The claimant became disabled on or about June 2, 2003.  *Reference: Evidence; Encrypted Disk-CD: 1E.tif, page 1, under docs Folder*

The claimant was diagnosed with "septated Hydrocele w/ evidence of torsion" which resulted in the loss of the Right testicle (loss of limb).  The medical conditions were diagnosed by Medical Personnel with the United States Department of Veterans Affairs and confirmed by medical personnel with the Social Security Administration; on or about November 9, 2014.  *Reference: Evidence; Encrypted Disk-CD: (1) 3F.tif, page31: (2) Social Security Act (the Act) sections 216 (i) and 223 (a) (3) Social Security Act sections 216 (i), 223 (d) and 1614 (a)(3)*

On or about November 9, 2014; the claimant was prescribed Prosthetic Devices through the diagnoses of "Torsion of Testis" (Right Inguinal Hernia Rupture).  Medical personnel estimated the length of need for prosthetic devices; "Life-time" of the claimant.  *Reference: Evidence; Encrypted Disk-CD: (1) 15F.tif, page 3: (2) Social Security Act (the Act) sections 216 (i) and 223 (a) (3) Social Security Act sections 216 (i), 223 (d) and 1614 (a)(3)*  The medical conditions have resulted in the claimant experiencing constant pain when walking, prolong sitting or standing.  The conditions require the constant use of pain medication; which jeopardizes the claimant's future health and well-being: medications known to have a hazardous effect on ones health.

The claimant was participating in a Vocational Rehabilitation Program, sponsored by the US Department of Veterans Affairs, during the year of 2014.  The right inguinal Hernia Rupture (Torsion of Testis) caused the discontinuance of participation in the program: claimant withdrew from classes enrolled in during the Fall 2014 school term at the University of Arkansas at Little Rock (UALR).  *Reference: UALR Office of Records and Registration: Drop/Withdrawal Form: included in this submation under ENCLOSURES*

The claimant's Medical conditions contributed to the termination of employment with employers, identifiable through the Work History: injuries consisted of Left shoulder injury (Pin inserted) and right inguinal hernia.  Employment with National Home Centers Inc., located at North Little Rock Arkansas, was terminated due to the aggravation of the left shoulder injury as well as the Inguinal Hernia condition. *Reference: Encrypted Disk-CD; docs folder, 4D.tif, pages 1-7*

360
361
362
363

Raymond D. Thompson  vs  Social Security Administration

SSA ADMINISTRATION: ADJUDICATION AND REVIEW: CLAIMANT; R.D. THOMPSON-0007: 11/29/2017

1   Medical personnel with the US Department of Veterans Affairs diagnosed the claimant
2   with chronic medical problems, unemployables issues and homelessness; during the
3   period from the onset of the disability (June 2, 2003) to present. *Reference: Evidence: Encrypted*
4   *Disk-CD: docs folder: (1) 15F.tif, pages 42-54*
5

6   The Disability Determination for Social Security Administration stated that the
7   claimant's case was currently "CLOSED-GRANTED": case closed on January 14, 2016.
8   Health summaries are reflective of the claimant's deteriorated health during the period of
9   Disability (June 2, 2003 to present): medical records dated from 04/26/2002 to
10  12/14/2015. *Reference; (1) Evidence; Encrypted Disk-CD docs folder: 11F.tif, pages 1-16 (2) Social Security Act (the Act)*
11  *sections 216 (I) and 223 (a) (3) Social Security Act sections 216 (I), 223 (d) and 1614 (a)(3)*
12

13  Radiology Consultants of Little Rock image (X-Ray) of the Claimant's left shoulder
14  injury: revealed a "screw passing obliquely from the anterior Inferior glenoid rim to the
15  posterior superior". The Consultant found evidence of orthopedic fixation of presumed
16  remote glenoid fracture, Irregular hyperostosis and narrowing of the inferior
17  glenohumeral joint space. *Reference: Evidence; Encrypted Disk-CD docs folder: 10F.tif, pages 1-2: under docs folder*
18  *of CD*  Medical evidence is highly reflective of the claimant's deteriorated health during
19  the life of the disabilities.
20

21  The Claimant's partial work history revealed the periods of Unemployment from the
22  onset of the Disability (June 2, 2003) to the present. *Reference: Evidence: Encrypted Disk-CD docs folder:*
23  *(1) 4D.tif, pages 1-7*
24

25  A Notice of Reconsideration the claimant received from the Social Security
26  Administration (SSA); dated March 8, 2016, stated that the Decision on the case was
27  based on Evidence which did not include the VA REQUEST/LITTLE ROCK. The data
28  stated in the preceding sentence conflicts with other reports received from SSA.
29  Claimant stated that the disability was incurred on 06/02/2003 because of pin in left
30  shoulder, hernia condition and loss of *left* testicle: note; actually the claimant loss
31  function of *right* testicle.  Disability coverage ended on 03/31/2006.  The report is
32  retrievable under reference. *Reference: Evidence; Encrypted Disk-CD docs folder: (1) 4B.tif, pages 1-2 (2) United*
33  *States Codes: Title II (Worker or Child-DIWC) (3) Title XVI (SSIA) and (SSID) (4) Social Security Act (the Act) sections 216 (I) and*
34  *223 (a) (3) Supplemental Security Income (SSI) through the Social Security Act sections 216 (I), 223 (d) and 1614 (a)(3)*
35

36  Social Security Administrators acknowledged receipt of the VA REQUEST/LITTLE
37  ROCK was received on 02/09/ (Ea 02/29/16): prior to the March 8, 2016 Notice of
38  Reconsideration: other documents in the Encrypted Disk (evidence), confirms the
39  Administration's receipt of records. *Evidence; Encrypted Disk-CD: 14F.tif, pages 1-2; located under the docs*
40  *folder of the CD*
41

42  The claimant residential status during periods post Disability (06/02/2003) was
43  dominated by Homelessness.  The claimant stayed at shelters and on the street:
44  Unemployment and the lack of Financial resources were dominating factors which
45  contributed to the homeless status.  Residency was provided by the US Department of
46  Veterans Affairs during stays at Arkansas, California (Los Angeles and Oakland),
47  Massachusetts (Boston and Revere), and Texas (El Paso and San-Antonio).  The
48  claimant's claim for benefits through the Social Security Administration was pending
49  Decisions at the indicated locations.  The life-style of a Homeless person, in good health,
50  increase the risk of the lost of life and limb. *Reference: Evidence; Encrypted Disk-CD: (1) Social Security Act*

4

364
365
366
367

Raymond D. Thompson  vs  Social Security Administration

(the Act) sections 216 (i) and 223 (a) (2) Supplemental Security Income (SSI) through the Social Security Act sections 216 ii), 223 (d) and 1614 (a)(3) (3) Encrypted Disk-CD. 13F.tif, pages 1-5 (4) Work History-Encrypted Disk-CD; 4D.tif, pages 1-7

The United States Department of Veterans Affairs medical personnel stated that the claimant Left Shoulder injury contributed to "degenerative arthritis in the left acromico-clavicular,  old blanket fx inferior glenoid w/cortical screw in place, calcific tendinitis supraspinatus tendon": the statement was dated, November 26, 2007.  A Veterans Affairs (VA) medical report dated February 15, 2013, stated that the Left Shoulder injury was the cause of pain and limited the range of motion of the left arm.  VA medical personnel stated that the claimant was experiencing Chronic Shoulder Pain (June 23, 2010) and moderate degenerative changes in the left shoulder (August 11, 2010).  The claimant was prescribed pain medications for the left shoulder injury: proven period of medications dated from July 10, 2002-present.  The Claimant's Left Shoulder injury has progressively worsened over the period of the Disability (June 3, 2003).  Medical reports submitted to the Social Security Administration are retrievable through the Encrypted Disk-CD of record.  *(1) References: Evidence: Encrypted Disk-CD docs folder: 8A.tif, pages 1-14 (2) United States Codes; Title II (Worker or Child-DIWC). Title XVI (SSIA) and (SSID) (3) Social Security Act (the Act)*

Medical personnel with the US Department of Veterans Affairs, Located at West Los Angeles California, recommended that the claimant "return to general surgery for re-evaluation and scheduling of open hernia repair w/possible mesh placement": report dated January 17, 2008.  *Reference: Evidence; Encrypted Disk-CD docs folder: 4F.tif, pages 13-14: under docs folder of CD*

On February 15, 2008 medical personnel with the West Los Angeles VA stated that "NO EVIDENCE OF INGUINAL HERNIAS".  *Reference: Evidence; Encrypted Disk-CD docs folder: 4F.tif, page 17*

The Claimant reported numerous incidences of the aggravation of the Right Inguinal Hernia condition to various Federal and State medical personnel; during the prevalence of the Disabilities.  Medical personnel with the US Department of Veterans Affairs, diagnosed the Claimant with "septated Hydrocele w/evidence of torsion"; which resulted in the loss of the Right Testicle (loss of limb) and the aggravation of the left testicle: risking total loss of reproduction function.  The conditions are permanent and warranted the prescription of Prosthetic Devices: medical conditions expected to last over the life of the Claimant.  *Reference: Evidence; Encrypted Disk-CD docs folder: (1) 3F.tif, page31: (2) Social Security Act (the Act) sections 216 (i) and 223 (a) (3) Social Security Act sections 216 (i), 223 (d) and 1614*

### List of Claimant's Active Medication/Long Term Health Hazards

➢ ACETAMINOPHEN 325MG TAB TAKE TWO TABLETS BY MOUTH
TWICE A DAY AS NEEDED FOR PAIN      ACTIVE
➢ HYDROCODONE 7.5/ACETAMINOPHEN 325MG TAB TAKE 1 TABLET
BY MOUTH THREE TIMES A DAY AS NEEDED    ACTIVE
➢ IBUPROFEN 400MG TAB TAKE ONE TABLET BY MOUTH EVERY 6
HOURS AS NEEDED    ACTIVE
➢ TERBINAFINE HCL 1% CREAM APPLY AS DIRECTED TO AFFECTED
AREA TWICE A DAY AS NEEDED ELBOW RASH    ACTIVE

5

368
369
370
371

Raymond D. Thompson  vs  Social Security Administration

SSA ADMINISTRATION· ADJUDICATION AND REVIEW: CLAIMANT; R.D. THOMPSON-0007: 11/29/2017

1    Prolong use of the medications listed in the preceding are known to have an adverse
2    effect on the patients (claimant) Health: usage can contribute to gastrointestinal disorders,
3    liver disease and kidney dysfunction; other organs failure. Medications listed have been
4    prescribed to the Claimant prior too and following the acquisition of the Disabilities:
5    Disability date; June 2, 2003. A description of the hazards of the use of the medications
6    is listed in the ENCLOSURES /folder. *Reference: Evidence: (1) Encrypted Disk-CD docs folder:15F.tif, page50*
7    *(2) VAMC North Little Rock, Ar 72114: Rx #'s 1267848, 364877776 and 364877776.*
8
9
10

## **CONCLUSION**

12
13    The Claimant (Raymond D. Thompson) became disabled on June 2, 2003. The
14    Disabilities are judicially defined through United States Code (USC), Title 42 Chapter 7-
15    Social Security; Subchapter I-(Grants To States For Old-Age Assistance)-§§ 301 to 306;
16    Subchapter II-Federal Old-Age, Survivors and Disability Insurance Benefits (§§ 401 to
17    434).
18
19    The Claimant Disabilities start Date is June 2, 2003 as defined through USC Title II
20    (Worker or Child-DIWC) and Title XVI (SSIA) and (SSID). The Claimants entitlement
21    to Disability Insurance Benefits is established through the authority of the "Social
22    Security Act (the Act) §§ 216 (i) and 223 (a). The Claimant's entitlement to
23    Supplemental Security Income (SSI) through the Social Security Act §§ 216 (i), 223 (d)
24    and 1614 (a)(3). The evidences (proof) of the Disabilities are stipulated through the
25    Claimant's "Position Statement".
26
27    The Claimant request, that Administrators of the Social Security Administration "Grant",
28    the benefits in eligibility as permitted by Law.
29
30    The Claimant request compensation for the Disabilities covering a period of June 2, 2003
31    to present: monthly compensation plus back pay.
32
33    Your assistance in this matter is appreciated.
34
35
36
37
38    Respectfully
39
40    Raymond D. Thompson
41    Claimant
42
43
44
45
46
47

6

372
373
374
375

Raymond D. Thompson  vs  Social Security Administration

SSA ADMINISTRATION: ADJUDICATION AND REVIEW: CLAIMANT; R.D. THOMPSON-0007: 11/29/2017

1
2  I, Raymond D. Thompson (Claimant), certify that this "Position Statement" is true
3  and correct to the best of my belief and knowledge.
4
5
6
7
8
9
10
11
12  **ENCLOSURES:**
13
14      I.  Documents from the University of Arkansas at Little Rock; Office of
15          Records and Registration, Drop/Withdrawal Form: Fall Term 2014
16      II. List of Medications/Hazards: Note; Folders.
17
18
19
20
21
22
23
24  **Reference:**
25
26      1.  United States Codes (USC) Title 42 Chapter 7-Social Security; Subchapter I-(Grants To States For
27          Old-Age Assistance-§§ 301 to 306; Subchapter II-Federal Old-Age, Survivors and Disability
28          Insurance Benefits (§§ 401 to 434)
29      2.  USC Title II (Worker or Child-DIWC); Title XVI (SSIA) and (SSID).
30      3.  Social Security Act (the Act) §§ 216 (i) and 223 (a): Supplement Security Income (SSI) through the
31          Act §§ 216 (i), 223 (d) and 1614:
32      4.  Social Security Administration; Office of Disability Adjudication and Review: Encrypted Disk-CD;
33          docs Folder: Dated July 20, 2-016 (PRIMARY EVIDENCE)
34      5.  Claimant's Medications History/Hazards
35
36
37
38  **References Enclosures:**
39
40
41
42

7

376
377
378
379

Raymond D. Thompson  vs  Social Security Administration

SSA ADMINISTRATION: ADJUDICATION AND REVIEW: CLAIMANT; R.D. THOMPSON-0007: 11/29/2017

November 12, 201

To: 2801 South University Avenue
Little Rock, AR 72204-1099
Phone: (501) 569-3110 Fax: (501) 569-8168
Email: records@ualr.edu

From: Raymond Darnell Thompson (Student)
Student ID#: T00010680

Purpose: Withdrawal from all Fall 2014 Classes/Medical Withdrawal

Dear Sir/Madam

I, Raymond D. Thompson (student), hereby request the withdrawal from all classes registered in this Fall 2014
school term.
Medical injury (1 thru 2 months bed-rest) is the cause of withdrawal: medical records confirming the conditions is
included.

Thank You

Raymond D. Thompson

1

8

380
381
382
383

Raymond D. Thompson  vs  Social Security Administration

1

**UALR** OFFICE OF RECORDS AND REGISTRATION

**Drop/Withdrawal Form**

2801 South University Avenue
Little Rock, AR 72204-1099
Phone: (501) 569-3110  Fax: (501) 569-8168
Email: records@ualr.edu

Print Name: Raymond Darnell Thompson

Student ID: T00010680

Signature:

Term: Fall 2014

Reason for Withdrawal: Medical injury/Bed rest for an 1 month to 2 months period.

Medical injury/Bed rest for an 1 month to 2 months period.

☑ Check here if you are withdrawing from all classes.

| CRN | Subject Code | Course Number | Section Number | Credit Hours | Course Title |
|---|---|---|---|---|---|
| 60188 | CHEM | Course Number 3350 | 40 | 3 | Organic Chemistry I |
| 60219 | CHEM | 3150 | 20 | 1 | Organic Chemistry 1 Laboratory |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**Office Use Only**

Operator: _____     Financial Aid Officer: _____

Date: _____     Other: _____

Drop / Withdrawal

3
4
5
6

9

384
385
386
387

Raymond D. Thompson  vs  Social Security Administration

SSA ADMINISTRATION: ADJUDICATION AND REVIEW: CLAIMANT; R.D. THOMPSON-0007: 11/29/2017

VANC NO LITTLE ROCK, AR 72114
598A (31666) / Rx: 001-257-1342

Rx# 1267848   NOV 12,2014. Fill 1 of 1
THOMPSON,RAYMOND DARNELL
TAKE 1 TABLET BY MOUTH THREE TIMES A
DAY AS NEEDED

Discard after NOV 12,2015_____   Mfr_____
NO REFILL
Qty: 20 TAB   GORDON,ANTHONY K
HYDROCODONE 7.5/ACETAMINOPHEN 325MG TAB

Abc: (118)                    Nov 12, 2014
2200 FT ROOTS DR BLD 66 RM 152
NO. LITTLE ROCK, AR 72114 -

THOMPSON,RAYMOND DARNELL
707 PARKDALE ST
N LITTLE ROCK, AR 72117

WINDOW -

598A (31666) NOV 12,2014@10:29
Rx# 1267848   NOV 12,2014 Fill 1 of 1
THOMPSON,RAYMOND DARNELL (DISG)
TAKE 1 TABLET BY MOUTH THREE TIMES A
DAY AS NEEDED

NO REFILL for this prescription

THOMPSON,RAYMOND DARNELL
Rx# 1267848   NOV 12,2014. Fill 1 of 1

Qty: 20 TAB   GORDON,ANTHONY K.
HYDROCODONE 7.5/ACETAMINOPHEN 325MG TAB
NDC 00406-0124-01        Lot#
Tech_____         RPh_____
Routing: WINDOW   Days supply: 7       Cap: SAFETY
last: NOV 9,2014   Exp: DEC 9,2014   Last Fill: N/A

Qty: 20 TAB   Days supply: 7
HYDROCODONE 7.5/ACETAMINOPHEN 325MG TAB
00406-0124-01
NO REFILL
COPAY                          LR PHARMACY-598A

DRUG WARNING 32TN,1N,66N
48N,20,5N,62N,70N,167N,14N
296N
Pat. Stat 5CL50 Clinic ER

**Additional Warnings:**
8N: Do not drink alcoholic beverages when taking this medication.
62N: May cause dizziness
70N: Do not take other ACETAMINOPHEN containing products at the same time without first checking with your doctor. Check all medicine labels carefully.
167N: May cause constipation. Ask your doctor or pharmacist about how to treat or prevent constipation while taking this medication.
14N: Obtain medical advice before taking non-prescription drugs as some may affect the action of this medication.
296N: Read the boxed warning information for this medication.

THOMPSON,RAYMOND DARNELL - Rx# 1267848   HYDROCODONE 7.5/ACETAMINOPHEN 325MG TAB

HYDROCODONE/ACETAMINOPHEN - ORAL: (HYE-droe-KOE-done/a-SEET-a-MIN-oh-fen)

WARNING: •One ingredient in this product is acetaminophen  Taking too much acetaminophen may cause serious (possibly fatal) liver disease. Adults should not take more than 4000 miligrams (4 grams) of acetaminophen a day. People with liver problems and children should take less acetaminophen. Ask your doctor or pharmacist how much acetaminophen is safe to take.  Do not use with any other drug containing acetaminophen without asking your doctor or pharmacist first. Acetaminophen is in many nonprescription and prescription medications (such as painfever drugs or cough-and-cold products). Check the labels on all your medicines to see if they contain acetaminophen, and ask your pharmacist if you are unsure.  Get medical help right away if you take too much acetaminophen (overdose), even if you feel well. Overdose symptoms may include nausea, vomiting, loss of appetite, sweating, stomach/abdominal pain, extreme tiredness, yellowing eyes/skin, and dark urine. Daily alcohol use, especially when combined with acetaminophen, may damage your liver. Avoid alcohol.

USES: This combination medication is used to relieve moderate to severe pain. It contains a narcotic pain reliever (hydrocodone) and a non-narcotic pain reliever (acetaminophen). Hydrocodone works in the brain to change how

THOMPSON,RAYMOND DARNELL   Rx# 1267848   HYDROCODONE 7.5/ACETAMINOPHEN 325MG TAB

laboratory personnel and all your doctors know you use this drug.

OVERDOSE: If overdose is suspected, contact a poison control center or emergency room immediately. US residents can call their local poison control center at 1-800-222-1222. Canada residents can call a provincial poison control center. Symptoms of overdose may include: slow/shallow breathing, nausea, vomiting, loss of appetite, sweating, stomach/abdominal pain, extreme tiredness, slow heartbeat, yellowing eyes/skin, dark urine, loss of consciousness.

NOTES: Do not share this medication with others. It is against the law.  This medication has been prescribed for your current condition only. Do not use it later for another condition unless your doctor directs you to do so. A different medication may be necessary in that case.

MISSED DOSE: If you are taking this product on a regular schedule and miss a dose, take it as soon as you remember. If it is near the time of the next dose, skip the missed dose and resume your usual dosing schedule. Do not double the dose to catch up.

1
2
3
4
5
6
7
8

-10-

388
389
390
391

# Raymond D. Thompson  vs  Social Security Administration

SSA ADMINISTRATION: ADJUDICATION AND REVIEW: CLAIMANT; R.D. THOMPSON-0007: 11/29/2017

feels and responds to pain. Acetaminophen can also reduce a fever.

**HOW TO USE:** See also Warning section. Read the Patient Information Leaflet if available from your pharmacist before you start taking this medication and each time you get a refill. If you have any questions, ask your doctor or pharmacist. Take this medication by mouth as directed by your doctor. You may take this drug with or without food. If you have nausea, it may help to take this drug with food. Ask your doctor or pharmacist about other ways to decrease nausea (such as lying down for 1 to 2 hours with as little head movement as possible). If you are using a liquid form of this medication, use a medication measuring device to carefully measure the prescribed dose. Do not use a household spoon because you may not get the correct dose. The dosage is based on your medical condition and response to treatment. In children, the dosage is also based on weight. Do not increase your dose, take the medication more frequently, or take it for a longer time than prescribed. Properly stop the medication when so directed. Pain medications work best if they are used as the first signs of pain occur. If you wait until the pain has worsened, the medication may not work as well. If you have ongoing pain (such as due to cancer), your doctor may direct you to also take long-acting narcotic medications. In that case, this medication might be used for sudden (breakthrough) pain only as needed. Other non-narcotic pain relievers (such as naproxen, ibuprofen) may also be prescribed with this medication. Ask your doctor or pharmacist if you have any questions about using this product safely with other drugs. This medication may cause withdrawal reactions, especially if it has been used regularly for a long time or in high doses. In such cases, withdrawal symptoms (such as restlessness, watering eyes, runny nose, nausea, sweating, muscle aches) may occur if you suddenly stop using this medication. To prevent withdrawal reactions, your doctor may reduce your dose gradually. Ask your doctor or pharmacist for more details, and report any withdrawal reactions immediately. When this medication is used for a long time, it may not work as well. Talk with your doctor if this medication stops working well. Along with its benefits, this medication may rarely cause abnormal drug-seeking behavior (addiction). This risk may be increased if you have abused alcohol or drugs in the past. Take this medication exactly as prescribed to lessen the risk of addiction. Tell your doctor if your pain persists or worsens.

**SIDE EFFECTS:** See also Warning section. Nausea, vomiting, constipation, lightheadedness, dizziness, or drowsiness may occur. Some of these side effects may decrease after you have been using this medication for a while. If any of these

THOMPSON,RAYMOND DARNELL Rx#: 1267848  HYDROCODONE 7.5/ACETAMINOPHEN 325MG TAB

effects persist or worsen, tell your doctor or pharmacist promptly. To prevent constipation, eat a diet adequate in fiber, drink plenty of water, and exercise. Consult your pharmacist for help in selecting a laxative (such as a stimulant type with stool softener). To reduce the risk of dizziness and lightheadedness, get up slowly when rising from a sitting or lying position. Remember that your doctor has prescribed this medication because he or she has judged that the benefit to you is greater than the risk of side effects. Many people using this medication do not have serious side effects. Tell your doctor immediately if any of these unlikely but serious side effects occur: mental/mood changes, severe stomach/abdominal pain, difficulty urinating. Seek immediate medical attention if any of these rare but serious side effects occur: fainting, seizure, slow/shallow breathing, unusual drowsiness/difficulty waking up. A very serious allergic reaction to this drug is rare. However, seek immediate medical attention if you notice any symptoms of a serious allergic reaction, including: rash, itching/swelling (especially of the face/tongue/throat), severe dizziness, trouble breathing. This is not a complete list of possible side effects. If you notice other effects not listed above, contact your doctor or pharmacist. In the US - Call your doctor for medical advice about side effects. You may report side effects to FDA at 1-800-FDA-1088. In Canada - Call your doctor for medical advice about side effects. You may report side effects to Health Canada at 1-866-234-2345.

**PRECAUTIONS:** See also Warning section. Before taking this medication, tell your doctor or pharmacist if you are allergic to it; or to other narcotic (such as hydromorphone, morphine, codeine); or if you have any other allergies. This product may contain inactive ingredients, which can cause allergic reactions or other problems. Talk to your pharmacist for more details. Before using this medication, tell your doctor or pharmacist your medical history, especially of: brain disorders (such as head injury, tumor, seizures), breathing problems (such as asthma, sleep apnea, chronic obstructive pulmonary disease-COPD), kidney disease, liver disease, mental/mood disorders (such as confusion, depression), personal or family history of regular use/abuse of drugs/alcohol, stomach/intestinal problems (such as blockage, constipation, diarrhea due to infection, paralytic ileus), difficulty urinating (such as due to enlarged prostate), gallbladder disease, disease of the pancreas (pancreatitis). This drug may make you dizzy or drowsy. Do not drive, use machinery, or do any activity that requires alertness until you are sure you can perform such activities safely. Avoid alcoholic beverages. Liquid products may contain sugar and/or alcohol. Caution is advised if you have diabetes, alcohol dependence, liver disease, or any other condition that requires you to limit/avoid these substances in your diet. Ask your doctor or pharmacist about using this product safely. Before having surgery, tell your doctor or dentist about all the products you use (including prescription drugs, nonprescription drugs, and herbal products). Older adults may be more sensitive to the side effects of this drug, especially confusion, dizziness, drowsiness, and slow/shallow breathing. Before using this medication, women of childbearing age should talk with their doctor(s) about the risks and benefits. Tell your doctor if you are pregnant or if you plan to become pregnant. During pregnancy, this medication should be used only when clearly needed. It may slightly increase the risk of birth defects if used during the first two months of pregnancy. Also, using it for a long time or in high doses near the expected delivery date may harm the unborn baby. To lessen the risk, take the smallest effective dose for the shortest possible time. Tell the doctor right away if you notice any symptoms in your newborn baby such as slow/shallow breathing, irritability, abnormal/persistent crying, vomiting, or diarrhea. This medication passes into breast milk and may rarely have undesirable effects on a nursing infant. Tell the doctor immediately if your baby develops unusual sleepiness, difficulty feeding, or trouble breathing. Consult your doctor before breast-feeding.

11

392
393
394
395

Raymond D. Thompson  vs  Social Security Administration

## FAX TRANSMITTAL SHEET

| NAME OF RECEIVER: | FAX NUMBER: | DATE: |
|---|---|---|
| Social Security Administration; Office of Disability Adjudication/Review: Administrative Law Judge: Bradley L. Davis | 1-501-324-7137 | 10/12/2017 |
| NAME OF SENDER: | SENDER PHONE NUMBER: | PAGES, INCL. COVER: |
| Raymond D. Thompson; Last 4th SSN: 0007 | 1-501-247-1411 | 12 |

MESSAGE:

The documents are the Claiment's (Raymond D. Thompson)
Position Statement: Adjudication Hearings: November 29, 2017.

Claiment's response to the issues in dispute. (RDT)

| | |
|---|---|
| LOCAL | $1.00 PER PAGE |
| TOLL FREE | $1.00 PER PAGE |
| LONG DISTANCE | $1.00 PER PAGE |
| INTERNATIONAL | $1.00 PER PAGE |

396
397
398
399

Raymond D. Thompson  vs  Social Security Administration

SSA ODAR
Rm 2405 Federal Bldg
700 West Capitol Ave
Little Rock, AR 72201

# 000001960    24000000    5131 7P CST

1958 7 ME 1.572


Raymond D Thompson
5400 Summertree Dr.
Apt. Sd11
North Little Rock, AR 72116

400
401
402
403

Raymond D. Thompson  vs  Social Security Administration

 **SOCIAL SECURITY ADMINISTRATION**

Office of Hearings Operations
Room 2405 Federal Building
700 West Capitol Avenue
Little Rock, AR 72201-3227

Date: February 5, 2018

Raymond Darnell Thompson
5400 Summertree Dr.
Apt. SD11
North Little Rock, AR 72116

### Notice of Decision – Unfavorable

I carefully reviewed the facts of your case and made the enclosed decision. Please read this notice and my decision.

**If You Disagree With My Decision**

If you disagree with my decision, you may file an appeal with the Appeals Council.

**How To File An Appeal**

To file an appeal you must ask in writing that the Appeals Council review my decision. You may use our Request for Review form (HA-520) or write a letter. The form is available at www.socialsecurity.gov. Please put the Social Security number shown above on any appeal you file. If you need help, you may file in person at any Social Security or hearing office.

Please send your request to:

**Appeals Council**
**Office of Hearings Operations**
**5107 Leesburg Pike**
**Falls Church, VA 22041-3255**

**Time Limit To File An Appeal**

You must file your written appeal **within 60 days** of the date you get this notice. The Appeals Council assumes you got this notice 5 days after the date of the notice unless you show you did not get it within the 5-day period.

Form HA-L76-OP2 (03-2010)

**Suspect Social Security Fraud?**
**Please visit http://oig.ssa.gov/r or call the Inspector General's Fraud Hotline**
**at 1-800-269-0271 (TTY 1-866-501-2101).**

See Next Page

404
405
406
407



Raymond D. Thompson  vs  Social Security Administration

Raymond Darnell Thompson (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)                    Page 2 of 3

The Appeals Council will dismiss a late request unless you show you had a good reason for not filing it on time.

**What Else You May Send Us**

You may send us a written statement about your case. You may also send us new evidence. You should send your written statement and any new evidence **with your appeal**. Sending your written statement and any new evidence with your appeal may help us review your case sooner.

**How An Appeal Works**

The Appeals Council will consider your entire case. It will consider all of my decision, even the parts with which you agree. Review can make any part of my decision more or less favorable or unfavorable to you. The rules the Appeals Council uses are in the Code of Federal Regulations, Title 20, Chapter III, Part 404 (Subpart J) and Part 416 (Subpart N).

The Appeals Council may:

- Deny your appeal.
- Return your case to me or another administrative law judge for a new decision,
- Issue its own decision, or
- Dismiss your case.

The Appeals Council will send you a notice telling you what it decides to do. If the Appeals Council denies your appeal, my decision will become the final decision.

**The Appeals Council May Review My Decision On Its Own**

The Appeals Council may review my decision even if you do not appeal. If the Appeals Council reviews your case on its own, it will send you a notice within 60 days of the date of this notice.

**When There Is No Appeals Council Review**

If you do not appeal and the Appeals Council does not review my decision on its own, my decision will become final. A final decision can be changed only under special circumstances. You will not have the right to Federal court review.

**Your Right To Representation In An Appeal**

If you appeal, you may choose to have an attorney or other person help you. Many representatives do not charge a fee unless you win your appeal. Groups are available to help you find a representative or, if you qualify, to give you free legal services. Your local Social Security office has a list of groups that can help you in this process.

Form HA-L76-OP2 (03-2010)

See Next Page

408
409
410
411

Raymond D. Thompson  vs  Social Security Administration

Raymond Darnell Thompson (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)                                    Page 3 of 3

If you get someone to help you with your appeal, you or that person must let the Appeals
Council know. If you hire someone, we must approve the fee before he or she is allowed to
collect it.

**New Application**

You have the right to file a new application at any time, but filing a new application is not the
same as appealing this decision. If you disagree with my decision and you file a new application
instead of appealing, you might lose some benefits or not qualify for benefits at all. My decision
could also be used to deny a new application for benefits if the facts and issues are the same. If
you disagree with my decision, you should file an appeal within 60 days.

**If You Have Any Questions**

We invite you to visit our website located at www.socialsecurity.gov to find answers to general
questions about social security. You may also call (800) 772-1213 with questions. If you are
deaf or hard of hearing, please use our TTY number (800) 325-0778.

If you have any other questions, please call, write, or visit any Social Security office. Please
have this notice and decision with you. The telephone number of the local office that serves your
area is (877)512-3854. Its address is:

Social Security Administration
3608 East Kiehl Avenue
Sherwood, AR 72120-9961


Bradley L. Davis
Administrative Law Judge

Enclosures:
Decision Rationale
Form HA-L39 (Exhibit List)



Form HA-L76-OP2 (03-2010)

412
413
414
415



### SOCIAL SECURITY ADMINISTRATION
**Office of Hearings Operations**

### DECISION

| **IN THE CASE OF** | **CLAIM FOR** |
| --- | --- |
| | Period of Disability, |
| | Disability Insurance Benefits, and |
| Raymond Darnell Thompson | Supplemental Security Income |
| (Claimant) | |
| | |
| | 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 |
| (Wage Earner) | (Social Security Number) |

### JURISDICTION AND PROCEDURAL HISTORY

On July 16, 2015, the claimant protectively filed a Title II application for a period of disability and disability insurance benefits. The claimant also protectively filed a Title XVI application for supplemental security income on July 16, 2015. In both applications, the claimant alleged disability beginning June 2, 2003. These claims were denied initially on January 19, 2016, and upon reconsideration on March 8, 2016. Thereafter, the claimant timely filed a written request for hearing on April 5, 2016 (20 CFR 404.929 *et seq.* and 416.1429 *et seq.*). The claimant testified at a hearing held on November 29, 2017, in Little Rock, Arkansas. Myrtle M. Johnson, an impartial vocational expert, testified at the hearing via conference telephone. Although informed of the right to representation, the claimant chose to testify and proceed without the assistance of an attorney or other representative (Exhibit 14B).

The claimant previously filed Title II and Title XVI applications on December 20, 2007. These applications were denied at the initial level on March 25, 2008. He also previously filed Title II and Title XVI applications on June 18, 2010. These applications were denied at the initial level on October 6, 2010 and at the reconsideration level on January 14, 2011. However, the undersigned finds no basis to reopen these prior determinations.

If the claimant wishes that written evidence be considered at the hearing, then the claimant must submit or inform the Administrative Law Judge about the evidence no later than five business days before the date of the scheduled hearing (20 CFR 404.935(a) and 416.1435(a)). Pursuant to 20 CFR 404.935(b) and 416.1435(b), if the claimant misses this deadline but submits or informs the Administrative Law Judge about written evidence before the hearing decision is issued, the Administrative Law Judge will accept the evidence if: (1) an action of the Social Security Administration misled the claimant; (2) the claimant had a physical, mental, educational, or linguistic limitation(s) that prevented submitting or informing the Administrative Law Judge

See Next Page

416
417
418
419

Raymond Darnell Thompson (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)                          Page 2 of 11

about the evidence earlier, or (3) some other unusual, unexpected, or unavoidable circumstance beyond the claimant's control prevented the claimant from submitting or informing the Administrative Law Judge about the evidence earlier.

The claimant submitted or informed the Administrative Law Judge about additional written evidence less than five business days before the scheduled hearing date. The undersigned Administrative Law Judge finds that the requirements of 20 CFR 404.935(b) and 416.1435(b) are satisfied and admits this evidence into the record.

## ISSUES

The issue is whether the claimant is disabled under sections 216(i), 223(d) and 1614(a)(3)(A) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

With respect to the claim for a period of disability and disability insurance benefits, there is an additional issue whether the insured status requirements of sections 216(i) and 223 of the Social Security Act are met. The claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through March 31, 2006. Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.

After careful consideration of all the evidence, the undersigned concludes the claimant has not been under a disability within the meaning of the Social Security Act from June 2, 2003, through the date of this decision.

## APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 404.1520(a) and 416.920(a)). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the undersigned must determine whether the claimant is engaging in substantial gainful activity (20 CFR 404.1520(b) and 416.920(b)). Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 404.1572(a) and 416.972(a)). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 404.1572(b) and 416.972(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it

See Next Page

420
421
422
423

## Raymond D. Thompson  vs  Social Security Administration

is presumed that he has demonstrated the ability to engage in SGA (20 CFR 404.1574, 404.1575, 416.974, and 416.975). If an individual engages in SGA, he is not disabled regardless of how severe his physical or mental impairments are and regardless of his age, education, and work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the undersigned must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c) and 416.920(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 404.1522 and 416.922; Social Security Rulings (SSRs) 85-28 and 16-3p). If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, the undersigned must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). If the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listing and meets the duration requirement (20 CFR 404.1509 and 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the undersigned must first determine the claimant's residual functional capacity (20 CFR 404.1520(e) and 416.920(e)). An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. In making this finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e), 404.1545, 416.920(e), and 416.945; SSR 96-8p).

Next, the undersigned must determine at step four whether the claimant has the residual functional capacity to perform the requirements of his past relevant work (20 CFR 404.1520(f) and 416.920(f)). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b), 404.1565, 416.960(b), and 416.965). If the claimant has the residual functional capacity to do his past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 404.1520(g) and 416.920(g)), the undersigned must determine whether the claimant is able to do any other work considering his residual functional capacity, age, education, and work experience. If the claimant is able to do

See Next Page

424
425
426
427

Raymond D. Thompson  vs  Social Security Administration

Raymond Darnell Thompson (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)                              Page 4 of 11

other work, he is not disabled. If the claimant is not able to do other work and meets the duration
requirement, he is disabled. Although the claimant generally continues to have the burden of
proving disability at this step, a limited burden of going forward with the evidence shifts to the
Social Security Administration. In order to support a finding that an individual is not disabled at
this step, the Social Security Administration is responsible for providing evidence that
demonstrates that other work exists in significant numbers in the national economy that the
claimant can do, given the residual functional capacity, age, education, and work experience (20
CFR 404.1512(f), 404.1560(c), 416.912(f) and 416.960(c)).

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, the undersigned makes the following findings:

**1.    The claimant meets the insured status requirements of the Social Security Act through
March 31, 2006.**

**2.    The claimant has not engaged in substantial gainful activity since June 2, 2003, the
alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).**

**3.    The claimant has the following severe impairments: hernia status post repair and
testicular torsion (20 CFR 404.1520(c) and 416.920(c)).**

The above medically determinable impairments significantly limit the ability to perform basic
work activities as required by SSR 85-28.

The following impairment is found to be "non-severe" because it does not result in any
discernible functional limitations: history of recurrent left shoulder dislocation with repair in the
1970's. July 2014 records from the Veterans Administration (VA) indicate his shoulder
discomfort is managed with over-the-counter Tylenol and estimated he actually took
approximately three per week (Exhibit 3F/216-219). During August 2014 C&P examination by
the Veterans Administration (VA), the physician noted the claimant had virtually full range of
motion of the left shoulder and no objective evidence of pain on exam that day. The physician
indicated there was nothing on the claimant's examination or his history that suggests his left
shoulder condition has limited his activities in any way (Exhibit 3F/192-200). During November
2015 consultative examination, the claimant had full range of motion of the shoulders. His grip
strength was five/five with adequate fine motor movements, dexterity, and ability to grasp
objects bilaterally (Exhibit 5F). December 2015 consultative x-rays of the left shoulder showed
evidence of orthopedic fixation of presumed remote glenoid fracture, but no acute fracture seen.
Irregular hyperostosis of the anterior inferior glenoid margin was seen and partially rounded in
contour. Mild narrowing of the inferior glenohumeral joint space was also noted (Exhibit 10F).
During March 2016 C&P examination by the VA, the physician noted the claimant had full
range of motion and normal muscle strength of the shoulders. He indicated the claimant's left
shoulder condition does not impact his ability to perform any type of occupational task (such as
standing, walking, lifting, sitting, etc.) (Exhibit 15F/17-26). The evidence of record indicates the
claimant has had no treatment for years on his shoulder. Therefore, the undersigned finds this
impairment to be non-severe.

See Next Page

428
429
430
431

Raymond Darnell Thompson (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)                    Page 5 of 11

**4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**

After a thorough review of the evidence, the Administrative Law Judge finds no evidence to show the existence of any impairment that meets the criteria of any listed impairment described in Appendix 1 of the Regulations (20 CFR, Part 404, Subpart P, Appendix 1, Regulations No. 4). Further, no treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment. In reaching this conclusion, the Administrative Law Judge has also considered the opinions of the State agency medical consultants who evaluated this issue at the initial and reconsideration levels of the administrative process and reached the same conclusions (20 CFR 404.1512 and 416.812; SSA 17-2p).

**5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c).**

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p. The undersigned has also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c and 416.920c.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)—i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities.

In August 2015, the claimant alleged a pin in the left shoulder, hernia condition, and loss of testicle limited his ability to work. The claimant reported he stopped working in June 2003 because he returned to school (Exhibit 2E). He indicated a hernia condition resulted in injury to the testicle in November 2014 (Exhibits 7F, 8F, 14E, 18E, and 16F). In September 2015, the claimant indicated the ability to do housecleaning, perform personal care, prepare simple meals, do laundry, use public transportation, shop in stores, pay bills, count change, use a checkbook/money order, read, watch television, listen to music, spend time with others, and go

See Next Page

432
433
434
435

Raymond D. Thompson  vs  Social Security Administration

to the library to check e-mail. He reported doing no outside chores since November 2015 (Exhibit 3E). The claimant reported he participated in a vocational rehabilitation program through the Department of Veterans Affairs (VA) from January 2009 through August 2015. He stated he had to participate in the upkeep of the facility that included attending classes, carrying a backpack weighing 20-30 pounds, using public transportation, walking, cleaning, and movement of objects up to 50 pounds (Exhibit 5E). The claimant indicated he attended college from September 2003 through May 2009 (Exhibit 19E).

At the hearing in this matter, the claimant alleged disabling symptoms and/or limitations associated with a hernia, loss of right testicle function, and left shoulder arthritis. The claimant testified that he obtained a Bachelor's Degree in Biology in 2015. He stated he has been working on obtaining the degree since the 1980's. In testifying about his work history, the claimant indicated that was a warehouse worker with duties including driving a forklift. He also worked as a teacher's aide for disabled children, which included taking care of them, lifting them, manipulating them, and helping them out with their physical and daily activities.

As to his alleged impairments, the claimant testified that he wears braces for support. He stated the braces and medication make the pain almost tolerable. He indicated the ability to lift 10 pounds, stand and walk two-three hours and sit two-three hours. The claimant testified he takes over-the-counter generic Tylenol for pain. He stated he takes Hydrocodone for severe pain, but takes it infrequently.

In regard to his activities of daily living, the claimant testified that he is able to make the bed, clean and mop his apartment, wash dishes, make coffee, and attend classes. He does not have a current valid driver's license and uses public transportation.

It must be noted that proof of a disabling impairment must be supported by at least some medical evidence. However, the evidence of record in this claim does not support the allegations of the claimant regarding the nature, severity and duration of his medically determinable impairments. It must be noted that while the claimant's statements regarding the nature and severity of his impairment(s) and its limiting effects is evidence that must be considered, a symptom is not objective medical evidence and is not a medically determinable impairment. No symptom by itself can establish the existence of such impairment or be the basis of a finding of disability (SSR 96-4p and 16-3p).

It is also fully acknowledged by the Administrative Law Judge that the claimant may well experience some degree of discomfort and/or impairment as a result of his medically determinable impairments. Further, while the claimant's allegations regarding the nature and severity of his condition(s) cannot be disregarded solely on the basis of an inconsistency or absence of medical evidence, such factors may be used to contradict the claimant's subjective complaints regarding the nature, severity and overall duration of his symptoms.

See Next Page

436
437
438
439

Raymond D. Thompson  vs  Social Security Administration

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained below.

Lisa Stewart, a Vocational Rehabilitation Counselor with the Department of Veterans Affairs, provided a letter dated August 19, 2015. She reported the claimant was an active participant in the Department of Veterans Affairs Vocational Rehabilitation and Employment Program. Ms. Stewart reported the claimant has a documented disability, identified by the US Department of Veterans Affairs and can be considered for employment under the Schedule A hiring authority (Exhibit 12F).

In terms of the claimant's alleged disabling impairments, the undersigned has very thoroughly considered the objective medical evidence. For the period from June 2, 2003, the claimant's alleged onset date, through March 31, 2006, the claimant's date last insured for Title II benefits, the record shows the claimant was treated in the emergency room (ER) at the VA on June 17, 2003 for a painful rash on his neck after a haircut (Exhibit 3F/315-318). There is no evidence of treatment for his alleged disabling impairments during this time period. Therefore, the undersigned finds the claimant did not have a disabling medically determinable impairment prior to his date last insured of March 31, 2006.

Regarding the claimant's alleged disabling impairments in connection with his Title XVI application filed July 16, 2015, the evidence of record shows that a bilateral inguinal ultrasound study on July 15, 2010 demonstrated normal appearing right inguinal lymph nodes with no evidence of a right or left inguinal hernia seen (Exhibit 1F/2-3). On July 7, 2014, the claimant was seen in the VA Primary Care Clinic. Reportedly, the claimant thought his right inguinal hernia had returned. Records note he wanted to avoid surgery and used a support instead. He also reported developing mild pain in the right testicle after carrying a backpack. On exam, the claimant's abdomen was flat and non-tender. He was diagnosed with history of right inguinal hernia repair and mild testicular pain. Reportedly, the condition was stable and was going to be monitored (Exhibit 3F/216-219).

William Dale Morris, M.D. performed a C&P Exam for the VA on August 6, 2014. He reported the claimant developed bulge in right groin in 1978, diagnosis of right inguinal hernia was made, and he underwent surgical repair. Dr. Morris noted the claimant reported now that three-four times per year he notices a recurrent bulge in the right groin with associated soreness and he will take it easy for several days and take Tylenol. The claimant reported it always resolves spontaneously. On exam, no hernia detected with no indication for a supporting belt. Dr. Morris reported the claimant's description sounds as if he has a recurrent hernia, but on his exam could not detect anything physical that suggests a recurrence. He reported the external inguinal ring was not dilated and he could not detect the slightest bulge or weakness of the floor of the inguinal canal. Dr. Morris stated that despite his description....this does not really cause any limitation of his activities (Exhibit 3F/190-192).

See Next Page

440
441
442
443

Raymond Darnell Thompson (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)                              Page 8 of 11

On November 9, 2014, the claimant presented to the VA ER with right testicular pain that started
on Tuesday when he felt like he pulled something. The ER physician diagnosed possible torsion
versus chronic ischemia after hernia repair. He recommended a jock strap and anti-
inflammatories for scrotal pain and support with Urology follow-up in one week. Ultrasound
showed the right testicle was very hypodense when compared to the left. No blood flow was
also noted. The physician reported findings were consistent with torsion. Records indicate a CT
scan was ordered, but the claimant left against medical advice before the scan was performed.
(Exhibit 3F/6-8 and 155-165).

Douglas Claybrook, M.D. with VA Urology Clinic saw the claimant for follow-up on
November 12, 2014. He noted a testicular scan demonstrated no flow into the right testicle and a
complex paratesticular collection suggesting inflammatory change. Dr. Claybrook reported the
claimant stated that his pain was minimal when he is sitting or lying and resting. On exam, the
left testicle was normal. Significant swelling of the right testicle with fullness and tenderness in
the cord structures was noted. Dr. Claybrook reported there was rugae noted in the testicle, so
some of the swelling had gone down. He noted offering the claimant surgical intervention either
with detorsion or orchiectomy to shorten the course of this event, but the claimant elected to just
watch it (Exhibit 3F/152-153).

On January 12, 2015, Dr. Claybrook provided a note reporting the claimant had an episode of
missed torsion and during the period of time from November 11 through December 12 he was
unable to participate in his vocational activities due to requirement for bed rest. Dr. Claybrook
stated that acute process has now resolved to a point where he is able to once again participate in
his vocational rehabilitation services (Exhibit 3F/144).

Sarabeth L. Martin, M.D. with VA Urology saw the claimant on February 27, 2015. She noted
the claimant was seen by Dr. Claybrook on November 12, 2014 and had testicular torsion on his
right testicle. Dr. Martin reported the claimant stated last time he saw Dr. Claybrook it was
about the size of a baseball and now it was down to a golf ball size. She noted he was doing well
with just Tylenol. On exam, the left testicle was palpably normal. The right testicle was golf
ball size and indurated due to testicle torsion. She diagnosed right testicular torsion (Exhibit
3F/114-115). Dr. Martin reported the claimant was doing well, could resume classes and lifting
of backpack (Exhibit 3F/145).

VA records dated August 19, 2015 indicate the claimant called the VA Primary Care stating he
needed a new prescription for his hernia support straps and for his pain medication. Records
note that review of medications disclosed no current pain medication prescribed except
acetaminophen 325 mg (brand name over-the-counter Tylenol), which had active refills. The
claimant was fitted with two hernia supports (Exhibit 3F/53-55).

Vanessa A. Anthony, APRN with VA Urology Clinic saw the claimant on October 16, 2015.
She noted the claimant elected observation and declined surgical management of testicular
torsion of the right testicle. Ms. Anthony noted the claimant reported the swelling had resolved,
but admitted to occasional tenderness of the right testicle. Ms. Anthony reported the claimant
had returned to school and was limiting the weight of lifting. He was also wearing scrotal
support. On exam, the claimant ambulated with steady gait and had good movement of all

See Next Page

444
445
446
447



Raymond D. Thompson  vs  Social Security Administration

extremities. The left testicle was palpably normal. Ms. Anthony reported the right testicle was now normal and without induration. There was slight tenderness of his right epididymis with palpation. Ms. Anthony reported no other follow-up was indicated that that time (Exhibit 15F:46-47).

John Harris, M.D. performed a consultative general physical examination on November 7, 2015. The claimant reported he got a severe right inguinal hernia and ruptured his testicle after picking up a backpack. He reported going to the ER and being told his testicle was nonfunctioning. It was offered to remove it, but he declined. Dr. Harris noted the claimant reported constant pain to his right inguinal groin area that is sometimes helped with Tylenol and support belt/apparatus. Reportedly, prolonged sitting, walking and lifting over approximately 10 pounds will make his pain worse. Current medications listed were Tylenol and Hydrocodone. On exam, Dr. Harris noted the claimant had some pain to the right inguinal area with range of motion of the right hip. However, the claimant was able to rise from a sitting position without assistance; stand on tiptoes and heels; and tandem walk without problems. He was able to bend and squat without difficulty. The claimant's gait was normal and he ambulated without assistive device. He had full range of motion of all extremities. Dr. Harris diagnosed previous right inguinal hernia with ruptured right testicle with constant pain (Exhibit 5F).

William Dale Morris, M.D. performed a C&P Exam for the VA on March 2, 2016. He noted evaluating the claimant in 2014 for symptoms of discomfort in the right groin and could not demonstrate any recurrent hernia. Dr. Morris reported that since then the claimant had had right testicular torsion resulting in the right testis becoming atrophic. On exam, Dr. Morris indicated no hernia was detected. Dr. Morris indicated the claimant's history of inguinal hernia and his right testicular condition do not impact his ability to work (Exhibit 15F/10-17).

Records from Central Arkansas Chiro indicate he received treatment beginning May 9, 2017 for neck pain, weakness in left hip, pain in left leg, and left shoulder pain following a motor vehicle collision while a passenger on a bus. Records indicate improvement in his symptoms and he was released on June 2, 2017 (Exhibit 17F).

In regard to any other alleged disabling conditions and/or symptoms as alleged by the claimant, there is no objective medical evidence from which to conclude the claimant has required any more than intermittent evaluation and treatment at most.

As for the opinion evidence, the undersigned notes that definitions of disability are not the same in all government and private disability programs and that government agencies must follow the particular laws which apply to their disability programs. The SSA program is primarily set up to discern whether one can do any substantial gainful activity and use vocational experts to determine other work activities and ascertain if there is a significant number of jobs available consistent with residual functional capacity work limitations. The VA on the other hand does not use testimony of vocational experts. The SSA also has different tests to assess for consistency of evidence, based on objective medical evidence, and whether medication non-compliance would significantly improve the claimant's ability to work. The VA's opinions are not conclusive as to the ultimate question embracing the claimant's medical condition and her ability to carry on substantial gainful activity.

See Next Page

448
449
450
451

Raymond D. Thompson  vs  Social Security Administration

Therefore, a finding by a private organization, state organization or another government agency such as the Veteran's Administration (VA), or treating or consultative examining physician, that a person is disabled would not necessarily mean that the person meets the disability requirements of the Social Security Act.  For example, under the rules of the VA, a percentage rating can be awarded for impairments not considered severe by the Social Security Administration.   VA records indicate the claimant receives 20% service connected/rated disabilities for inguinal hernia (10%) and traumatic arthritis (10%) (Exhibit 15F/4).  The claimant testified his rating has been increased.  The undersigned notes after August 2014 C&P exam by the VA, the physician indicated both the claimant's hernia condition and shoulder condition do not impact his ability to work (Exhibit 3F/192 and 200).  After March 2016 C&P examination, the VA physician indicated that both the claimant's testicle issue and shoulder issue were not considered to impact his ability to work (Exhibit 15F/17 and 25).  The undersigned finds the opinions of the C&P physicians are consistent with the overall evidence of record and supportive of the above residual functional capacity.

Following November 2015 consultative examination, Dr. Harris opined the claimant should be able to sit for a full workday with occasional walking and/or standing as needed and should be able to lift/carry objects less than 15 pounds.  He stated the claimant's urologic records should be obtained to correlate his urologic workup for an adequate disability determination (Exhibit 5F).  The undersigned assigns little weight to this opinion.  It appears Dr. Harris was basing his opinion on the claimant's report and limitations provided are inconsistent with the objective evidence.  It is noted that C&P exam in 2014 indicated both the claimant's hernia condition and shoulder condition do not impact his ability to work (Exhibit 3F/192 and 200) and 2016 indicated that both the claimant's testicle issue and shoulder issue were not considered to impact his ability to work (Exhibit 15F/10-17).

The undersigned has considered the administrative findings of fact made by the physicians employed by the State Disability Determination Services (DDS) non-examining expert source.  The DDS consultants concluded there was insufficient evidence for the period prior to the claimant's date last insured for Title II benefits and based on his Title XVI application he claimant could perform work at the medium level (Exhibits 1A, 2A, 5A, and 7A).  Although those physicians were non-examining, and therefore their opinions do not as a general matter deserve as much weight as those of examining or treating physicians, those opinions do deserve some weight.  The undersigned agrees with the findings of the DDS consultants.  The opinions of the DDS consultants are consistent with the overall evidence of record.

The overall nature and severity of the claimant's impairments have not been as severe, debilitating and/or resistant to improvement with medical treatment intervention as alleged by the claimant.  It must be emphasized that the Administrative Law Judge is bound by the Social Security Act and applicable regulations in reaching a final conclusion on the issue of disability.

The fact that the claimant may have some level of pain and limitation associated with his history of hernia status post repair and testicular torsion is given due consideration by the undersigned in reaching the finding that the claimant would be limited to work at the medium physical exertional level.

See Next Page

452
453
454
455

Raymond D. Thompson  vs  Social Security Administration

Raymond Darnell Thompson (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)                    Page 11 of 11

Upon careful consideration, the Administrative Law Judge finds that the evidence establishes that the claimant, despite his impairments, has adequate limb function, mobility and range of motion and his activities of daily living are not unduly restricted.  His symptoms, limitations and/or restrictions do not preclude him from the performance of all work activity.

**6.    The claimant is capable of performing past relevant work as a Warehouseman and Child Care Attendant.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).**

The vocational expert testified at the hearing in agreement with the _Dictionary of Occupational Titles_ (DOT), that the claimant's past relevant work was classified as follows:  Warehouseman, DOT #922.687-058, SVP 2, unskilled, and medium exertion level; and Child Care Attendant-School, DOT #355.674-010, SVP 2, unskilled, and medium exertion level.

As required by SSR 82-62, this work was substantial gainful activity, was performed long enough for the claimant to achieve average performance, and was performed within the relevant period.  In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed.

**7.    The claimant has not been under a disability, as defined in the Social Security Act, from June 2, 2003, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).**

**DECISION**

Based on the application for a period of disability and disability insurance benefits protectively filed on July 16, 2015, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.

Based on the application for supplemental security income protectively filed on July 16, 2015, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

_/s/ Bradley L. Davis_
Bradley L. Davis
Administrative Law Judge

February 5, 2018
Date

456
457
458
459

Raymond D. Thompson  vs  Social Security Administration

## LIST OF EXHIBITS

### Payment Documents/Decisions

| Component No. | Description | Received | Dates | Pages |
|---|---|---|---|---|
| HO 1A | Disability Determination Explanation T2 IN | | 12/07/2015 | 11 |
| HO 2A | Disability Determination Explanation T16 IN | | 01/08/2016 | 17 |
| HO 3A | Disability Determination Transmittal T2 IN | | 01/19/2016 | 1 |
| HO 4A | Disability Determination Transmittal T16 IN | | 01/19/2016 | 1 |
| HO 5A | Disability Determination Explanation T2 RC | | 03/07/2016 | 13 |
| HO 6A | Disability Determination Transmittal T2 RC | | 03/08/2016 | 1 |
| HO 7A | Disability Determination Transmittal T16 RC | | 03/08/2016 | 1 |
| HO 8A | Disability Determination Explanation T16 RC | | 03/08/2016 | 17 |

### Jurisdictional Documents/Notices

| Component No. | Description | Received | Dates | Pages |
|---|---|---|---|---|
| HO 1B | T2 Notice of Disapproved Claim | | 01/19/2016 | 3 |
| HO 2B | T16 Notice of Disapproved Claim | | 01/19/2016 | 4 |
| HO 3B | Request for Reconsideration | | 01/26/2016 | 2 |
| HO 4B | T2 Disability Reconsideration Notice | | 03/08/2016 | 2 |
| HO 5B | T16 Disability Reconsideration Notice | | 03/08/2016 | 3 |
| HO 6B | Request for Hearing by ALJ | | 04/05/2016 | 1 |
| HO 7B | Request for Hearing by ALJ | | 04/05/2016 | 2 |
| HO 8B | Request for Hearing Acknowledgement Letter | | 05/04/2016 | 13 |

HA-L39 (03-2007)

460
461
462
463

Raymond D. Thompson  vs  Social Security Administration

Raymond Darnell Thompson (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)                    Page 2 of 5

| | | | | |
|---|---|---|---|---|
| HO 9B | Outgoing ODAR Correspondence | | 03/24/2017 | 3 |
| HO 10B | Hearing Notice | | 09/01/2017 | 14 |
| HO 11B | Acknowledge Notice of Hearing | | 09/06/2017 | 2 |
| HO 12B | Notice of Hearing (Experts only) | | 09/25/2017 | 3 |
| HO 13B | Notice Of Hearing Reminder | | 11/15/2017 | 1 |
| HO 14B | Waiver of Right to Representation | During hearing | 11/29/2017 | 1 |

## Non-Disability Development

| Component No. | Description | Received | Dates | Pages |
|---|---|---|---|---|
| HO 1D | Application for Disability Insurance Benefits | | 07/24/2015 | 4 |
| HO 2D | Application for Supplemental Security Income Benefits | | 07/24/2015 | 9 |
| HO 3D | Certified Earnings Records | | 06/23/2016 | 5 |
| HO 4D | Detailed Earnings Query | | 06/23/2016 | 7 |
| HO 5D | Summary Earnings Query | | 06/23/2016 | 1 |
| HO 6D | Certified Earnings Records | | 06/23/2017 | 3 |
| HO 7D | Detailed Earnings Query | | 06/23/2017 | 9 |
| HO 8D | Summary Earnings Query | | 06/23/2017 | 1 |
| HO 9D | New Hire, Quarter Wage, Unemployment Query (NDNH) | | 06/23/2017 | 1 |

## Disability Related Development

| Component No. | Description | Received | Source | Dates | Pages |
|---|---|---|---|---|---|
| HO 1E | Disability Report - Field Office | | | to 07/24/2015 | 4 |
| HO 2E | Disability Report - Adult | | | to 08/10/2015 | 9 |

HA-L39 (03-2007)

Raymond D. Thompson  vs  Social Security Administration

Raymond Darnell Thompson (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)                                Page 3 of 5

| | | | | | |
|---|---|---|---|---|---|
| HO 3E | Function Report - Adult | | | to 09/15/2015 | 8 |
| HO 4E | Pain Questionnaire / Report | | | to 09/15/2015 | 6 |
| HO 5E | Work History Report | | | to 09/18/2015 | 11 |
| HO 6E | Disability Report - Field Office | | | to 01/29/2016 | 2 |
| HO 7E | Disability Report - Appeals | | | to 01/29/2016 | 7 |
| HO 8E | Disability Report - Appeals | | | to 04/21/2016 | 7 |
| HO 9E | Disability Report - Field Office | | | to 04/21/2016 | 2 |
| HO 10E | Exhibit List to Rep PH2E | | | to 07/20/2016 | 6 |
| HO 11E | Outgoing ODAR Correspondence | ODAR LIT ROC AR- Case Readiness | | to 07/06/2017 | 9 |
| HO 12E | Work Background | Raymond Thompson | | to 07/10/2017 | 1 |
| HO 13E | Recent Medical Treatment | Raymond Thompson | | to 07/10/2017 | 1 |
| HO 14E | Medications | Raymond Thompson | | to 07/10/2017 | 1 |
| HO 15E | Statement of Claimant or Other Person | Raymond Thompson | | to 07/11/2017 | 2 |
| HO 16E | Resume of Vocational Expert | Turner | | to 08/29/2017 | 1 |

HA-L39 (03-2007)

468
469
470
471

Raymond D. Thompson  vs  Social Security Administration

Raymond Darnell Thompson (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)                              Page 4 of 5

|        | HO 17E | Resume of Vocational<br>Expert | | Johnson | to<br>09/25/2017 | 3 |
|        | HO 18E | Claimant<br>Correspondence | | Raymond<br>Thompson | to<br>10/12/2017 | 12 |
|        | HO 19E | Claimant<br>Correspondence | During<br>hearing | Raymond<br>Thompson | | 3 |

### Medical Records

| Component No. | Description | Received | Source | Dates | Pages |
|---|---|---|---|---|---|
| HO 1F | Hospital Records | | VA Oakland, CA | 02/15/2008<br>to<br>05/17/2011 | 48 |
| HO 2F | Hospital Records | | VA LA, CA | 11/09/2007<br>to<br>10/05/2015 | 78 |
| HO 3F | Hospital Records | | VA LR | 07/10/2002<br>to<br>05/31/2016 | 325 |
| HO 4F | Hospital Records | | VA LA, CA | 11/09/2007<br>to<br>10/20/2015 | 74 |
| HO 5F | Consultative<br>Examination Report | | Southern Medical<br>Group - LR | to<br>11/17/2015 | 5 |
| HO 6F | Request for Medical<br>Advice | | DDS LIT ROC<br>AR | to<br>12/09/2015 | 1 |
| HO 7F | Hospital Records | | VA - Bedford | 09/04/2011<br>to<br>02/24/2014 | 269 |
| HO 8F | Hospital Records | | VA - Bedford | 09/14/2011<br>to<br>03/11/2014 | 270 |
| HO 9F | Hospital Records | | VA Bedford | 12/17/2013<br>to<br>01/17/2015 | 17 |
| HO 10F | Consultative<br>Examination Report | | Radiology<br>Consultants of<br>LR | to<br>12/28/2015 | 2 |

HA-1.39 (03-2007)

472
473
474
475

Raymond D. Thompson  vs  Social Security Administration

Raymond Darnell Thompson (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)                                    Page 5 of 5

| | HO 11F | Hospital Records | VA - San Antonio, TX | 08/04/2009 to 03/01/2010 | 39 |
|---|---|---|---|---|---|
| | HO 12F | Misc Current Development/Temporary | Dept. of Vetrans Affairs | to 08/19/2015 | 1 |
| | HO 13F | DDS Disability Worksheet | DDS LIT ROC AR | 09/09/2015 to 01/19/2016 | 5 |
| | HO 14F | DDS Disability Worksheet | DDS LIT ROC AR | 02/04/2016 to 03/08/2016 | 4 |
| | HO 15F | Hospital Records | VA - LR | 03/13/2014 to 03/17/2016 | 58 |
| | HO 16F | Misc ODAR Documents | | to 04/21/2016 | 1 |
| | HO 17F | Office Treatment Records | Central Arkansas Chiropractic North | 05/09/2017 to 06/05/2017 | 19 |

HA-L39 (03-2007)

476
477
478
479

Raymond D. Thompson  vs  Social Security Administration

SOCIAL SECURITY ADMINISTRATION
OFFICE OF DISABILITY ADJUDICATION AND REVIEW *Keep for your Recd*   Form Approved OMB No. 0960-0269

**REQUEST FOR HEARING BY ADMINISTRATIVE LAW JUDGE**   See Privacy Act Notice

(Take or mail the **completed original** to your local Social Security office, the Veterans Affairs Regional Office in Manila or any U.S. Foreign Service post and keep a copy for your records)

| 1. Claimant Name | 2. Claimant SSN | 3. Claim Number, if different |
|---|---|---|
| Raymond D. Thompson | 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 | |

4. I REQUEST A HEARING BEFORE AN ADMINISTRATIVE LAW JUDGE. I disagree with the determination because:
*On or about 06/01/2006, the claimant filed for benefits from the Social Security administration due to an aggravated right hernia conditions. Claim denied. On or about 11/14/2014, the right hernia ruptured and resulted in the host of the right hernia's constant pain resulted. Deteriorated medical conditions are the basis of the hearing.*

An Administrative Law Judge of the Social Security Administration's Office of Disability Adjudication and Review or the Department of Health and Human Services will be appointed to conduct the hearing or other proceedings in your case. You will receive notice of the time and place of your hearing at least 20 days before the date set for a hearing.

5. I have additional evidence to submit. ☑ Yes  ☐ No

Name and source of additional evidence, if not included.
*United States Department of Veterans Affairs (VA Hospital) located at Little Rock Ark. VA Medical Hospital records at Little Rock*

Submit your evidence to the hearing office within 10 days. Your servicing Social Security office will provide the hearing office's address. Attach an additional sheet if you need more space.

6. Do not complete if the appeal is a Medicare issue. Otherwise, check one of the blocks.
☑ I wish to appear at a hearing.
☐ I do not wish to appear at a hearing and I request that a decision be made based on the evidence in my case. (Complete Waiver Form HA-4608)

**Representation:** You have a right to be represented at the hearing. If you are not represented, your Social Security office will give you a list of legal referral and service organizations. If you are represented, complete and submit form SSA-1696 (Appointment of Representative) unless you are appealing a Medicare issue.

| 7. CLAIMANT SIGNATURE (OPTIONAL) | DATE | 8. NAME OF REPRESENTATIVE (If any) | DATE |
|---|---|---|---|
| Raymond D. Thompson | 04/04/2016 | N/A | N/A |

| RESIDENCE ADDRESS | | | ADDRESS | | |
|---|---|---|---|---|---|
| 433 McCain Blvd. apt. 215c | | | | | |

| CITY | STATE | ZIP CODE | CITY | STATE | ZIP CODE |
|---|---|---|---|---|---|
| North Little Rock | Ark | 72116 | | | |

| TELEPHONE NUMBER | FAX NUMBER | TELEPHONE NUMBER | FAX NUMBER |
|---|---|---|---|
| 501-351-3633 | N/A | | |

**TO BE COMPLETED BY SOCIAL SECURITY ADMINISTRATION- ACKNOWLEDGMENT OF REQUEST FOR HEARING**

| 9. Request received on | APR 05 2015 | by: | Mike Moxie | | T4 |
|---|---|---|---|---|---|
| | (Date) | | (Print Name) | | (Title) |
| 3608 E. Kiehl  Sherwood AR | | | | L37 | |
| (Address) | | | | (Servicing FO Code) | (PC Code) |

10. Was the request for hearing received within 65 days of the reconsidered determination? ☐ Yes  ☐ No
If no, attach claimant's explanation for delay and supporting documents if any.

11. If claimant is not represented, was a list of legal referral service organizations provided? ☐ Yes  ☑ No

12. Interpreter needed ☐ Yes  ☑ No
Language (including sign language):

13. Check one: ☑ Initial Entitlement Case
☐ Disability Cessation Case  or  ☐ Other Postentitlement Case

14. NO COPY SENT TO: _____ HO on _____
☐ Claims Folder (CF) Attached: ☐ Title (T) II;  ☐ T XVI;
☐ T VIII;  ☐ T XVIII;  ☐ T II CF held in FO  ☐ Electronic Folder
☐ CF requested ☐ T II;  ☐ T XVI;  ☐ T VIII;  ☐ T XVIII
(Copy of email or phone report attached)

16. CF COPY SENT TO: _____ HO on _____
☐ CF Attached:  ☐ Title (T) II;  ☐ T XVI;  ☐ T XVIII
☐ Other Attached:

15. Check all claim types that apply:
☐ Retirement and Survivors Insurance Only (RSI)
☐ Title II Disability - Worker or child only (DIWC)
☐ Title II Disability - Widow(er) only (DIWW)
☐ Title XVI (SSI) Aged only (SSIA)
☐ Title XVI Blind only (SSIB)
☐ Title XVI Disability only (SSID)
☐ Title XVI/Title II Concurrent Aged Claim (SSAC)
☐ Title XVI/Title II Concurrent Blind (SSBC)
☐ Title XVI/Title II Concurrent Disability (SSDC)
☐ Title XVIII Hospital/Supplementary Insurance (HI/SMI)
☐ Title VIII Only Special Veterans Benefits (SVB)
☐ Title VIII/Title XVI (SVB/SSI)
☐ Other - Specify:

Form HA-501-U5 (01-2015) ef (01-2015)
Use 08-2012 Edition Until Stock is Exhausted

TAKE OR SEND ORIGINAL TO SSA AND RETAIN A COPY FOR YOUR RECORDS

CLAIMS FOLDER

480
481
482
483

Raymond D. Thompson  vs  Social Security Administration

**PRIVACY ACT STATEMENT**
**Request for Hearing by Administrative Law Judge**

Sections 205(a) (42 U.S.C. 405 (a)), 702 (42 U.S.C. 902), 1631(e) (1) (A), and; (B) (42 U.S.C. 1383(e) (1) (A) and (B)), 1839(i) (42 U.S.C. 1395r), 1869(b) (1), and (c) (42 U.S.C. 1395ff) of the Social Security Act, as amended, authorize us to collect this information. We will use the information you provide to continue processing your claim.

Providing this information is voluntary. However, failing to provide us with all or part of the requested information may prevent us from making an accurate and timely decision on your claim.

We rarely use the information you supply for any purpose other than for determining problems in Social Security programs. However, we may use it for the administration and integrity of Social Security programs. We may also disclose information to another person or to another agency in accordance with approved routine uses, which include, but are not limited to the following:

1. To enable a third party or an agency to assist Social Security in establishing rights to Social Security benefits and/or coverage;

2. To comply with Federal laws requiring the release of information from Social Security records (e.g., to the Government Accountability Office and the Department of Veterans' Affairs);

3. To make determinations for eligibility in similar health and income maintenance programs at the Federal, State, and local level; and

4. To facilitate statistical research, audit, or investigate activities necessary to assure the integrity of Social Security programs.

We may also use the information you provide in computer matching programs. Matching programs compare our records with records kept by other Federal, State, or local government agencies. Information from these matching programs can be used to establish or verify a person's eligibility for Federally-funded or administered benefit programs and for repayment of payments or delinquent debts under these programs.

A complete list of routine uses for this information is available in System of Records Notices 60-0089, Claims Folder System and 60-0050, Completed Determination-Continuing Disability Determinations. These notices, additional information regarding this form, and information regarding our programs and systems, are available on-line at www.socialsecurity.gov or any local Social Security office.

**Paperwork Reduction Act Statement** - This information collection meets the requirements of 44 U.S.C. § 3507, as amended by Section 2 of the Paperwork Reduction Act of 1995. You do not need to answer these questions unless we display a valid Office of Management and Budget control number. We estimate that it will take about 10 minutes to read the instructions, gather the facts, and answer the questions. **SEND OR BRING THE COMPLETED FORM TO YOUR LOCAL SOCIAL SECURITY OFFICE. You can find your local Social Security office through SSA's website at www.socialsecurity.gov. Offices are also listed under U. S. Government agencies in your telephone directory or you may call Social Security at 1-800-772-1213 (TTY 1-800-325-0778).** *You may send comments on our time estimate above to:SSA, 6401 Security Blvd, Baltimore, MD 21235-6401. Send only comments relating to our time estimate to this address, not the completed form.*

Form HA-501-U5 (01-2015) ef (01-2015)

484
485
486

Raymond D. Thompson  vs  Social Security Administration

IM-0055

**County Office :**
PULASKI CO HUMAN SER NORTH
1900 E WASHINGTON AVE
P O BOX 5791
N LITTLE ROCK  AR  72119-5791

Este aviso contiene datos sobre las
prestaciones de usted.  Si necesita la
traducción en español, favor
llame al 1-800-482-8988.

**Case Worker :** THIER NANCI S
**Phone :**        501-682-0287
**Telecommunications Device for the**
**Deaf Only :**    501-682-0102

**DATE OF NOTICE :** 10/11/17
**DATE OF ACTION :** 10/11/17

## DEPARTMENT OF HUMAN SERVICES
**Division of County Operations**
**NOTICE OF ACTION**
If you need a notice in an alternative format  such as
Braille, Large Print, or by computer tape or disk, contact
your caseworker.

RAYMOND D THOMPSON
APT 5D-11
5400 SUMMERTREE DR
NORTH LITTLE ROCK   AR       72116

**DEADLINE FOR APPEAL :** 01/09/18

EFFECTIVE ON THE DATE OF ACTION ABOVE, A CHANGE WILL OCCUR ON YOUR SUPPLEMENTAL
NUTRITION ASSISTANCE PROGRAM CASE BUT YOUR BENEFIT AMOUNT REMAINS $  186.
Your report form has been processed. Your SNAP benefit amount will not change.

If you reported a change in the people in your SNAP household, the members added to or dropped from the
case will be listed below. If you reported a change in your household's income or expenses, the old
amounts and the new amounts will be listed below. This action is based on SNAP 11100.

If you want to keep your benefits during an appeal, read "Your Right to a Hearing" on the other side of
this notice.

OUR RECORDS SHOW YOUR HOUSEHOLD SIZE AS 01. IF YOUR HOUSEHOLD  TOTAL GROSS
INCOME INCREASES TO MORE THAN $ 1307.00 YOU MUST REPORT THE INCREASE IN INCOME
TO THE DHS COUNTY OFFICE.

**\*\*YOUR ELIGIBILITY/BENEFITS ARE BASED ON THE INCOME AND EXPENSES LISTED BELOW\*\***

| INCOME CHANGED | FROM | TO | INCOME CHANGED | FROM | TO |
|---|---|---|---|---|---|
| GROSS EARNINGS | $ 0 | $ 0 | CHILD SUPPORT | $ 0 | $ 0 |
| TEA | $ 0 | $ 0 | OTHER INCOME | $ 0 | $ 0 |
| SSI | $ 0 | $ 0 | EXPENSES CHANGED | | |
| SOCIAL SECURITY | $ 0 | $ 0 | FARM LOSS | $ 0 | $ 0 |
| UNEMPLOYMENT | $ 0 | $ 0 | DEPENDENT CARE | $ 0 | $ 0 |
| VETERANS BENEFITS | $ 368 | $ 368 | MEDICAL | $ 0 | $ 0 |
| RAILROAD RETIREMENT | $ 0 | $ 0 | CHILD SUPPORT | $ 0 | $ 0 |
| WORKERS COMPENSATION | $ 0 | $ 0 | RENT/MORTGAGE | $ 16.00 | $ 16.00 |
| | | $ | OTHER SHELTER | $278.00 | $278.00 |

**PLEASE READ THE BACK OF THIS NOTICE FOR INFORMATION ABOUT WHAT TO DO IF YOU
DISAGREE WITH THIS ACTION.**              1N C 043                    007476983C

487
488
489
490

Raymond D. Thompson vs Social Security Administration

## YOUR RIGHT TO A HEARING

If you disagree with the action we plan to take, you may have a hearing. You have until the DEADLINE FOR APPEAL date shown on the front of this notice to ask for a hearing. If you request a hearing within 10 days from the DATE OF NOTICE shown on the front page, your assistance may be continued at its present level or reinstated to its previous level pending a decision on your appeal.

**EXCEPTIONS:**  The SNAP case will not remain open beyond the certification period.

    If the TEA case is closed as a result of the time limit, benefits will not be continued.

However, you may be required to repay the additional benefits if the hearing decision is not in your favor. If you wish to discuss your case with the County Office before deciding to file a hearing, you should contact your County Office immediately.

You may request a hearing by writing or talking to an employee of the County Office, by writing to Appeals & Hearings, P.O. Box 1437, Slot N401, Little Rock, AR 72203 or by checking the request for a fair hearing box below.  SNAP customers may request a hearing by telephone.  If you are requesting a hearing by checking the box, please mail this form to the county office address listed on the front of this notice of action or to Appeals & Hearings at the address shown above.

☐    **Please check this box if you are requesting a fair hearing because you disagree with the case action.**

If you request a hearing, you have the right to appear in person and to be represented by a lawyer or by another person you have selected. You may contact the HelpLine Center for Arkansas Legal Services at 1-800-952-9243 to request free legal aid.   (In Pulaski County, you should call 501-376-3423.)  You may also log onto their website at www.arkansaslegalservices.org and click on the HelpLine icon.

Prior to the hearing, you and/or your representative have the right to review your record and any other evidence that is to be presented at the hearing.  You have the right to present evidence in your own behalf, to bring witnesses, and to question any person who is presented as a witness against you.

## YOUR RESPONSIBILITY TO REPORT CHANGES

It is your continuing responsibility to report changes in income, resources, or circumstances which might affect your eligibility. Failure to report changes may cause an overpayment which is subject to legal action for collection and prosecution for Fraud. If you are overpaid in TEA or SNAP benefits, collection may involve withholding all or part of your future benefits.

For TEA and Medicaid you are required to report changes within 10 days.

**SNAP recipients** must report the following changes: (1) Changes in any source of income earned or unearned.  (2) Changes in resources. (3) Changes in household composition.  (4) Changes in residence.  If you receive a semi-annual report form, you may report all changes on the semi-annual report.  If not, you must report within 10 days of the date you learn of the change.

All households (TEA, Medicaid, or SNAP) should report changes of address as soon as possible.

**FOR MEDICAID ONLY:** If an individual who is receiving Medicaid is applying for other health insurance and needs verification of "creditable coverage", please contact your local DHS office.

491